JIM DUNAGAIN v. THE STATE.

No. 1402.  Decided February 9, 1898.

1. **Aggravated Assault and Battery—Impeachment of One's Own Witness—Original Evidence.**

On a trial for aggravated assault by a husband upon his wife, the State placed the wife upon the stand as a witness, and she denied the alleged assault. Held, the State could not prove its case by original testimony showing that she had made contradictory statements outside of court. A party can only impeach his own witness where the witness has sworn to material evidence injurious to the party, but where there has been simply a failure to make proof by the witness, the witness can not be impeached by contradictory statements.

2. **Assault by Husband Upon the Wife—Evidence—Divorce by Wife.**

An assault by a husband upon his wife can not be proved by and it is inadmissible to introduce in evidence a judgment of divorce obtained by the wife upon the ground of the assault he had made upon her.

APPEAL from the County Court of Ellis.  Tried below before Hon. J. C. SMITH, County Judge.

Appeal from a conviction for aggravated assault by a husband upon his wife; penalty, a fine of $25.

Mrs. Minnie Dunagain testified: "I am the wife of the defendant. I was before the grand jury some time in last May. I made a statement before the grand jury. My husband, the defendant, did not make an assault on me on or about May 1, 1897; did not strike me with his hands; he never did make an assault on me or strike me." At this point, the county attorney asked the witness, "When you were before the grand jury, did you not state then that your husband struck you with his hand and beat you?" To which she answered, "I don't remember what I said." The county attorney then asked her, "Did not your husband, Mr. Dunagain, assault you and hit you with his hand about May 1st last?" To which she answered, "No, sir; he did not." Whereupon the county attorney went to the witness stand and presented to witness her purported statement, made before the grand jury, signed by making a mark, and asked her if she did not make such statement, and upon witness replying that she could not read it, the county attorney read it over to her in a low tone of voice, and then asked her if she did not make such statement and sign it, to which the witness answered, that she did not remember what she said before the grand jury. The county attorney then proceeded to ask witness if she did not make certain statements before the grand jury, reading such statements from the book which had been shown witness, and asked her if she did not make such

statements, were they true or false; to which defendant objected. Where-
upon the court had the jury withdrawn; and, after having the state-
ment read to him, the court remarked, "that this is another case of a
woman having made up with her husband, and was attempting to swear
him out, and that he would permit the county attorney to lead the wit-
ness, to read and ask her about the purported statement made before
the grand jury, and all about the matter," to which remarks of the court
the defendant excepted at the time. The jury then being brought in,
the county attorney read as follows from her purported statement be-
fore the grand jury: "On the evening of the 9th of May, Jim Dunagain,
my husband, after accusing me of illicit relations with other men, and
after I had refused intercourse with him, beat and choked me;" and then
asked the witness, "Did you make that statement before the grand jury?"
to which witness replied, "I don't know." He then asked her if she
did make that statement, was it true or false? She answered that it was
false. He then asked her, "If you did make that statement, you lied
then, did you?" The county attorney then further asked her, still
reading from the statement, "Didn't you tell the grand jury that Bill
Tinnery and Jesse Green were witnesses?" To which she answered,
"I don't know." He then read from said statement: "About two
months ago he beat me with his fist and kicked me," and asked her if
she did not make that statement. She answered, "I don't know." He
then asked her, "If you made that statement, was it true or false?" To
which she answered, "It was false." He then asked her, "Did you not
tell the grand jury that Henry Duncan saw him beating you with his
fist, and saw him with a chair drawn on you?" To which she answered,
"Not that I remember." He then asked the witness if it was not a fact
that about May 1, 1896, she showed Mrs. Myers stripes on her back, and
told her that defendant had whipped her with a switch, to which she
answered, "It is not a fact." The county attorney then read to the wit-
ness the full statement purported to be made by her, viz.: "On the
evening of the 9th of May, Jim Dunagain, my husband, after accusing
me of illicit relations with other men, and after I refused intercourse
with him, beat and choked me. Mr. Bill Tinnery and Mr. Jesse Green
are witnesses. About two months ago he beat me with his fists and
kicked me. Elmore Elder saw this. Henry Duncan saw him beating
me with his fists, and saw him with a chair drawn on me, also. Wit-
nesses who have seen marks of violence, Frank Fowler, Mrs. May Myers,"
and asked her whether or not that statement was true or false, to which
she answered, "It is not so; I don't believe I made such statement."
He then asked her if she did not show Mrs. Smotherman stripes on her
back, and tell her Jim Dunagain had whipped her with a switch, to
which she answered, "I did not." To all of which defendant objected.

On cross-examination the witness testified as follows: "My husband
and I had frequent quarrels. Different parties had told me lies about
him." Sometime about last May she was quarreling with him, and he

would not quarrel with her. She got mad, and caught hold of him and shook him, and he pushed her away, and she screamed. "I was aggravating him. I can be as aggravating as anybody when I want to. He never did strike me or assault me in any way except when I was aggravating him, and had hold of him, he pushed me away. Myers, Bill Tinnery, Jesse Green, and others had been trying to get me to leave him and get a divorce, and told me if he ever touched me, to halloo, and they would all come and tend to him."

On re-examination she said, in answer to the question of the county attorney, "if she did not get a divorce from defendant," that "she had." Then he asked "if she did not get the divorce on the grounds of the alleged assault," to which she answered, "She did not." She said further, that she had gotten a divorce from defendant since then, and had been remarried to him, and that the divorce was pending when she was before the grand jury.

The State proved by other witnesses the statements made by her contradicting her testimony as to the material facts indicated by her testimony.

*Fears & Crocker,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of an aggravated assault upon his wife, and appeals.

During the trial the wife was placed upon the stand, and questioned with reference to the alleged assault, which she denied. The State, after first laying the predicate, over appellant's objection, proved her statement made before the grand jury in regard to the matter, in which she swore to certain facts which constituted this assault. The court seems to have admitted this testimony mainly upon the theory that she was an unwilling witness, but, under the record before us, it would be immaterial whether it was upon this theory or for the purpose of contradicting her. That an unwilling witness may be led, under some circumstances, is conceded, and that witnesses may be impeached is placed beyond question; but, because these propositions are true, it does not authorize the State to prove, as original testimony, its case by showing the witness made statements outside of court contradictory of those testified to on the trial. The State may contradict its witness when that witness has sworn to material evidence injurious to the State, but it can not put the witness on the stand, and, having failed to make proof of a criminating fact, prove its case by the statement of the witness made off of the witness stand at any other time or place. In this character of case it would be simply a failure of proof, and the State can not supply that failure by showing that the witness made statements at other times or places which, if true, might establish the charge upon which the defendant was being tried.

The State also introduced the judgment in the divorce suit between the defendant and his wife in which she obtained a divorce. By that judgment it was shown that the ground upon which the divorce was granted was his assault upon her. This was objected to by appellant. This action of the court was clearly erroneous, it having no other effect than to show that the allegations in the information were true. If not introduced for this purpose, it would be difficult to conceive the purpose of its introduction. The assault in this case could not be proved in this manner. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*