## J. B. CLAYTON v. THE STATE.

### No. 1509. Decided May 22, 1912.

### Rehearing denied June 26, 1912.

**1.—Murder—Charge of Court—Sufficiency of the Evidence.**

Where, upon trial of murder, the court charged murder in the first and second degree, manslaughter and self-defense, and there was no complaint thereto, and the evidence sustained the conviction of murder in the second degree, there was no error.

**2.—Same—Evidence—Divorce—Judgment.**

Where, upon trial of murder, the evidence showed that the woman about whom the homicide occurred was the former wife of defendant from whom she had been divorced, there was no error in admitting in evidence the decree of divorce in her favor, there being other evidence to the same effect; besides the bill of exceptions was insufficient as the objections were too general and did not point out any error. Distinguishing Dunagain v. State, 38 Texas Crim. Rep., 614.

**3.—Same—Evidence—Bill of Exceptions.**

Where, upon trial of murder, the defendant on cross-examination denied that he had been convicted of a felony, etc., and the State's counsel asked him how long it had been, to which defendant objected and was sustained by the court, there was no error; besides the bill was insufficient in not pointing out the objections raised to the question. Following Huggins v. State, 60 Texas Crim. Rep.; 215, and other cases.

**4.—Same—Argument of Counsel.**

Where, upon trial of murder, the bill of exception to the argument of counsel, with reference to the divorce about which there was some evidence in the record, did not show any such injury to the rights of defendant as would justify the reversal of the case, there was no error. See opinion as to latitude in argument of counsel.

**5.—Same—Rule Stated.**

Unless the bill of exceptions shows that the remarks objected to are obviously of a nature to impair the rights of defendant, and prejudice his case before the jury, such remarks though improper will not be considered cause for reversal, unless a charge was asked and refused and exceptions reserved at the time. Following Hatchell v. State, 47 Texas Crim. Rep., 385, and other cases.

**6.—Same—Case Stated.**

Where, upon trial of murder, the evidence showed the acts and conduct of defendant concerning the woman who was formerly his wife, and that she had obtained a divorce from him upon some statutory ground, and defendant sought to reduce the homicide to manslaughter on account of the relations of deceased to defendant's said former wife, there was no reversible error in permitting State's counsel in discussing this testimony, and the character of defendant in this behalf.

**7.—Same—Evidence—Judgment—Notice.**

Where, upon trial of murder, the State introduced in evidence a judgment of divorce which was obtained by a woman about whom the homicide arose in the same court in which defendant was tried for murder, there was no error under article 2306, Revised Civil Statutes, and no notice, or the filing thereof with the record in the criminal case was necessary. Article 784, Revised Code, Criminal Procedure.

Appeal from the District Court of Tom Green. Tried below before the Hon. J. W. Timmins.

Appeal from a conviction of murder in second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*W. A. Anderson* and *Jas. P. Dumas,* for appellant.—On question of introducing decree of divorce: Golin v. State, 37 Texas Crim. Rep., 90; Lamar v. State, 49 id., 563; Dunagain v. State, 38 id., 614.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of argument of counsel: Byrd v. State, 39 Texas Crim. Rep., 610.

PRENDERGAST, JUDGE.—Appellant was indicted for the murder of Bob Gibson on May 13, 1909, tried in June, 1911, convicted of murder in the second degree and his penalty fixed at ten years in the penitentiary.

A brief statement of the case only is necessary. Some sixteen or seventeen years before the homicide appellant was married to a woman whose name was Mrs. M. A. Dement, she having shortly before the trial remarried. While living with her, there was born to them five children, the older two living at the time of the homicide—one, a son, then about fifteen years old, and the other a daughter, about thirteen.

The deceased was a saloonkeeper at the time and for some time prior to the homicide. On January 28, 1909, Mrs. Dement secured a divorce from appellant on grounds not stated. Some months shortly prior to the divorce, appellant took deceased to his house for the purpose of gambling and at that time introduced the deceased to his wife. Shortly after that, she testified, that one day while the deceased and appellant were at her home, her two children being present, the appellant having been on a drunk and wanting more whisky, then and there said to the deceased that he wanted $5.20, or a ticket to Lampasas, and if he, the deceased, would give it to him he would turn over to him his wife and children and his interest in their place; that the deceased thereupon wrote appellant a check for $5.20; that she made no objection to it and was willing to be sold for the $5.20; that she had possession of their girl. The appellant then left her home and got drunk and came back to her home the next day. (The appellant denied this.)

By some of appellant's witnesses he proved, as they expressed it, that deceased run appellant away from his wife and took her away from him; and by another, that the deceased lived in open adultery with appellant's wife. It was also shown that shortly after said divorce deceased was staying with said woman, and appellant came up there one night, came around the back way, knocked at the back door and wanted her to open it. She refused. That made him mad and he cursed her; that he said every low-down thing; used very of-

fensive language to her and threatened, if she did not open the door, he was going to burst it down. Thereupon. deceased ordered him away from the house and shot off his pistol in the house, but not at appellant, for the purpose of driving him away from there. This occurred shortly before the homicide.

On the night of the killing the appellant and his fifteen-year-old son were working for a show that was in San Angelo at that time and the appellant, the said woman and their two children went to the show together at night. Shortly after they reached there, and the appellant and said woman and their daughter had procured seats together, the deceased came in the show drinking, if not drunk. The testimony from all the witnesses shows that soon after the deceased appeared on the scene a difficulty occurred between appellant and him. Just how it occurred the witnesses differ. just about as much as would be expected, seeing it from different standpoints. We give substantially appellant's version which is about a fair statement of it, to the effect: That the deceased came in and sat down four or five seats above him; then got up and walked down in front of him, who was sitting two or three seats from the ground, stopped and turned his face to him, and each watched the other and deceased made some remark, perhaps insulting, when he told him not to do that, that he did not want any trouble with him. Deceased then put his foot on the seat in front of him and turned like he was going to sit down. Appellant then slapped or knocked him down and the deceased fell on or among some Mexicans sitting still further down, and upon getting up asked, "Where is the son-of-a-bitch that hit me?" or some such language. Some persons got between them then and appellant told the deceased to go on. The deceased then went off some fifteen or twenty feet and sat there the remainder of the show, which lasted some two hours. The deceased and appellant during this whole time watched one another and deceased made some insulting or threatening gestures towards appellant and was heard to use some opprobrius epithets, or perhaps make some threats. Appellant was too far off to hear and did not hear this. After the show closed the appellant and said woman and their daughter started to leave, going the back way, the same they had come; others were doing the same thing, while many others of the audience went out the front way. Deceased also started out the back way and deceased and appellant came close to one another, each watching the other and the deceased still giving appellant, as he claims, an offensive look. Appellant testified further as follows: "As I walked on towards the door he butted up by my side, almost between me and the woman, and started out after us. I said to him, "Don't follow me any further; I don't want to have any trouble with you." He just made a face at me and I walked on but did not take my eyes off him. He followed on after me three or four steps when I turned and hit him with a snuff bottle. This checked him, and I said, "Don't follow me any

further; if you do I will hurt you." We all started on again towards the door and got nearly to it, I looked back and saw him make a quick move and when I grabbed my gun he was picking up a rock. I said to him then, 'If you pick that up I will hurt you.' He kept on trying to pick up a rock and I commenced shooting. He had his hand nearly on the rock when I shot. I shot him because I thought he was going to kill me. Yes, I was afraid of him."

The testimony by the State would show, in effect, that after the appellant, the woman and his daughter started out the back way, the deceased was going out the same way following them when the altercation between the deceased and appellant occurred; appellant ordered him not to follow him, they all still moving along, and that as deceased did not stop the appellant threw a snuff bottle at him, striking him .on the head above the eye, cutting his face; that blood flowed therefrom and that deceased stooped down to pick up a rock about the size of one's fist, but did not do so, when the appellant jerked out his six-shooter and began firing at deceased; that deceased then somewhat retreated, stooped down or got down in a crouching position and begged appellant not to murder him; that appellant's first shot missed deceased, struck and killed a Mexican, one of the audience, going out or waiting to go out this back way. That he continued to shoot and struck deceased in the back in the shoulder, the balls ranging down and through the body, one of them going to the skin but not through it, about the left nipple. The witnesses did not agree fully as to the location and direction of the bullet wounds. The last of the five shots struck another Mexican in the leg but did not kill him.

The court charged murder in the first and second degree, manslaughter and self-defense. There is no complaint of the charge of the court. The evidence was ample to justify the jury to find the appellant guilty of murder in the second degree.

Appellant's attorneys have filed a forceful brief. They present and urge in their brief and assignments several grounds for reversal.

The first ground urged is to the introduction of the divorce decree in favor of his wife. The judgment is copied in the bill. It gives the style, number of the cause and the term at which it was rendered. It states that on January 28, 1909, the cause was called when the plaintiff appeared in person and by attorney and announced ready and the defendant, though duly cited, made default, and after hearing plaintiff's petition and the evidence, the court was of the opinion that the plaintiff was entitled to a divorce, and in a very few words decreed it. The only objection appellant made was, "that it is immaterial and irrelevant." The State contends and cites the following authorities, and we are of opinion that these objections are too general and do not point out any material error. Lamb v. State, 55 Texas Crim. Rep., 325; Hamblin v. State, 41 Texas Crim. Rep., 139; McGrath v. State, 35 Texas Crim. Rep., 422; Carter v. State, 40

Texas Crim. Rep., 229. Many other authorities might be cited, but we think it unnecessary.

Besides this, by the introduction of the judgment no injury occurred to appellant because the bill shows that Mrs. Dement, formerly Mrs. Clayton, testified that she procured the divorce, but could not fix the date of·it, and appellant further stated, as shown by the bill, that if she did not testify to the date of the divorce he would admit the fact of the existence of the judgment of the divorce and the date thereof. All this being shown, and the decree showing only that, no injury whatever occurred to the appellant by the introduction of the judgment. The case of Dunagain v. State, 38 Texas Crim. Rep., 614, cited and relied upon by appellant is not in point upon this question. In that case the appellant was prosecuted for an assault on his wife. The State introduced her as a witness and she testified that he did not assault her. The State then, over appellant's objections, introduced a judgment for divorce wherein she had alleged and by the judgment established an assault as her ground for divorce. This judgment was used in the criminal case not only to dispute her testimony, but for the purpose of establishing thereby the assault upon her. This could not be done. Nothing like it was sought or shown by the judgment in this case.

The following, after the formal heading and conclusion, is appellant's fifth bill of exceptions: "The defendant, J. B. Clayton, while a witness in his own behalf, upon cross-examination by Judge Woodward, counsel for the State, and having been asked on such cross-examination this question: 'I will ask you to state if you have not been convicted of a felony and sentenced to the penitentiary within the last eight or ten years?' to which the defendant answered, 'No, sir.' This question was asked him by said State's counsel: 'How long has it been?' to which question defendant objected and asked the court for a bill of exceptions of counsel's asking the question and requested the court to instruct counsel to confine himself to the rules, which objection of the defendant the court sustained, but refused to instruct counsel further, to which the defendant then and there in open court excepted to the question of counsel."

It will be seen by this that no ground of objection is stated, nor are any of the facts stated in the bill from which we can tell whether this question was improper or injurious. Clearly, the bill is insufficient to require us to pass upon the question. For the rules, long since established and followed by this court, see sec. 1123, p. 732, and sec. 857, p. 557, of White's Annotated Code Criminal Procedure. However, even if the bill was full and complete and stated what appellant's objection to the evidence was, it does not present any reversible error. Huggins v. State, 60 Texas Crim. Rep., 215; Wright v. State, 140 S. W. Rep., 1105; Cannon v. State, 41 Texas Crim. Rep., 480; Morrow v. State, 56 Texas Crim. Rep., 521; Phillips v.

State, 59 Texas Crim. Rep., 537; Sweeney v. State, 65 Texas Crim. Rep., 593, 146 S. W. Rep., 883, recently decided.

The only other assignments by appellant presented and urged in his brief are several separate bills of exception to remarks of the prosecuting attorney in argument to the jury. These several bills present separate, distinct and isolated remarks, or argument by the attorney representing the State. None of them give the evidence or surrounding facts, or occasion for the remarks so that we can tell therefrom whether or not they were material and outside of the record and injurious to the appellant. It is unnecessary to give these several bills, or the language in each specially complained of.

The only special charge requested by appellant and refused by the court as to any of these matters is the following: "You are instructed to disregard the argument of Mr. Cornell as to the statutory grounds for divorce, there having been no evidence as to such grounds, nor as to which of such grounds said divorce may have been granted."

Considerable latitude must necessarily be permitted to attorneys for both sides in the argument of their cases. They must necessarily be permitted to discuss the credibility of the witnesses and the weight to be given to their testimony. They can also be permitted to argue and make deductions from the legitimate testimony that has been adduced—otherwise the argument of counsel would in most instances be valueless to the side represented by the attorney. Of course, they must stay within the record and the deductions to be properly drawn from the testimony in the record. It is not every improper argumen which should reverse a case, even though the attorneys in their zeal go outside of the record and the legal deductions therefrom. As stated by Judge Hurt for this court in Bass v. State, 16 Texas Crim. App., 69:

"The argument for the State was not proper. Counsel for the State made some observations to the effect that the prosecutrix, seeing defendant under such circumstances, would not be likely ever to forget his features. This was argument, and whether sound or fallacious, this court will not reverse the judgment. It is contended by the appellant that there is no evidence that the prosecutrix saw the features of defendant, and that therefore these remarks were out of the record. We believe that there is evidence tending to show that the prosecutrix saw the face of defendant; but, suppose we concede that the counsel for the State assumed a fact and commented upon such fact which was not in proof, this court would not reverse the judgment unless such conduct was very clearly calculated to prejudice the rights of defendant. To reverse in all cases in which counsel did not confine themselves to the record would render trials farces. In fact, rare would be the case in which such irregularities would not occur."

In House v. State, 19 Texas Crim. App., 227, this court, through Presiding Judge White, in discussing this objectionable remark by

the district attorney, "The State of Texas might be raked over with a fine tooth comb, and a more notorious character than the defendant, John House, could nowhere be found," to which appellant objected because defendant's character had not been put in issue, said:

"True, his character had not been directly put in issue by himself. Still, the charge against him, and evidence which had been adduced to support it, were in their nature likely to reflect somewhat unfavorably upon his character, even if they did not put its notoriety throughout the State in issue. We construe the remark to be not so much evidence of a desire to make use of foreign matter to the jury and prejudice of defendant, as an impassioned expression, highly exaggerated it may be, but springing inadvertently from the heat of debate. If all such remarks were held reversible error, but few convictions would stand the test where the case had been hotly contested by able and zealous counsel in the courts below."

Again, this court, through Presiding Judge Davidson, in Tweedle v. State, 29 Texas Crim. App., 591, in discussing objectionable language, used by the State's attorney in argument to the jury, said:

"Concede that this argument was improper, it does not follow that the judgment should be reversed for this cause. The remarks must not only be improper, but they must be of such a nature as would be clearly calculated to prejudice the rights of the defendants. To reverse in all cases where counsel fail to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel upon either side. It would be a remarkable coincidence if this were not true. House v. The State, 19 Texas Crim. App., 227; Bass v. The State, 16 Texas Crim. App., 62."

The rule on this subject is that unless the bill shows that the remarks objected to are obviously of a nature to impair the rights of the appellant, and prejudice his case before the jury, such remarks, though improper, will not be considered cause for reversal, unless a charge was asked and refused and exception reserved at the time. Hatchell v. State, 47 Texas Crim. Rep., 385; Felder v. State, 127 S. W., 1055; Rahm v. State, 30 Texas Crim. App., 313; Vann v. State, 48 Texas Crim. Rep., 15; Kennedy v. State, 19 Texas Crim. App., 634; Young v. State, 19 Texas Crim. App., 543; Lancaster v. State, 36 Texas Crim. Rep., 20; Dies v. State, 56 Texas Crim. Rep., 36; Wright v. State, 37 Texas Crim. Rep., 146; Franklin v. State, 38 Texas Crim. Rep., 347. It is useless to cite other cases to the same effect.

Even looking to the whole record in this case and going beyond the bills of exception, we think it was not reversible error, under the proof showing the acts and conduct of the appellant concerning the woman, who was formerly his wife, at the time she was his wife and afterwards, for the attorney to comment on his conduct towards her

in connection with the conceded and unquestioned fact that she had sued him for divorce and procured it upon some statutory ground, even though there was no direct testimony upon which ground said divorce was obtained, especially, in view of the fact that appellant was seeking to reduce the homicide to manslaughter in connection with deceased's relations to appellant's former wife, and deceased's conduct towards her and appellant on the night of the homicide. Neither was it reversible error, under the circumstances of this case, to permit the attorney for the State to discuss the character of the appellant as to what kind of a father and husband he was, which, we think, was legitimately deducible from appellant's conduct towards said woman and his daughter. And while appellant's character, as a peaceable, law-abiding citizen was not directly put in issue by him by proof to that effect, in view of all the facts in the record and the appellant's testimony, it was not reversible error to permit the State's attorney to discuss that question. (Coyle v. State, 31 Texas Crim. Rep., 604; House v. State, 19 Texas Crim. App., 239.)

Viewing the record as a whole, while some isolated expressions by the State's attorney may have been improper, yet, neither of the appellant's bills, nor all of them, show any such injury to the appellant as would justify this court to reverse this case. And there appearing no other reversible error from any of appellant's assignments, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 26, 1912.

PRENDERGAST, Judge.—Appellant, in his motion for rehearing, contends that this court *"incorrectly"* found in the original opinion that the only objection made to the introduction of the divorce decree was that it was irrelevant and immaterial, claiming that he also objected to it because "the judgment, or copy thereof, would have to be filed with the record in this cause and notice given the defendant, which has not been done."

Appellant is correct in stating that his bill shows that this objection was made. Of course, we noticed that in reading his bill of exceptions and his brief, but in his brief he did not present that question, but urged the other objections that the judgment was immaterial and irrelevant. We took it that the reason appellant did not present that question in his brief was that upon reflection he had concluded that there was nothing in that objection. However, as he now insists upon it, we will pass thereon.

Article 784 (764), Code Criminal Procedure, says: "The rules of evidence prescribed in the statute law in this State in civil suits shall, so far as applicable, govern also in criminal actions when not in conflict with the provisions of this Code, or of the Penal Code." We know of no other statute, either in the Penal or Procedure Code,

which, on this subject, prescribes any other or different rule. We, therefore, go to the Revised Civil Statutes to see what they prescribe on the subject.

The divorce judgment introduced in this case was in the same court that this case was tried in and the minutes of that court contained the judgment in both civil and criminal matters. The only article in the Revised Civil Statutes which regulates the subject is article 2306,. which says: "Copies of the records of all public officers and courts of this State, certified to under the hand and seal (if there be one) of the lawful possessor of such records, shall be admitted in evidence in all cases where the records themselves would be admissible." The clerk of the court in which this cause was pending was introduced, sworn as a witness, and produced the minute book of the court in which this case was being tried in which the divorce decree was recorded. After being thus identified, the divorce decree was introduced in evidence. No notice of any kind whatever is required by this statute or any other statute, civil or criminal, that either a certified copy of the judgment of the court in which a case is being tried, in order to be introduced in evidence, or the judgment book itself, shall be filed and notice of three days or any other time shall be given as a prerequisite to the introduction in evidence of a judgment therein recorded. The record itself, without any notice whatever, would be admissible, and so would a certified copy thereof.

Evidently appellant overlooked this statute and doubtless had in mind article 2312 of the Revised Civil Statutes of Texas, which prescribes that: "Every instrument of writing which is permitted or required by law to be recorded in the office of the clerk of the County Court, and which has been or may be so recorded after being proven or acknowledged in the manner provided by the laws in force at the time of its registration shall be admitted as evidence without the necessity of proving its execution; provided, that the party who wishes to give it in evidence shall file the same among the papers of the suit in which he proposes to use it, at least three days before the commencement of the trial of such suit, and give notice of such filing to the opposite party or his attorney of record," . . . It is perfectly evident that this statute had no reference whatever to the judgment of the court, but applies exclusively to instruments between private parties, such as deeds, bills of sale, deeds of trust and such like documents. Appellant's citation of the case of Golin v. State, 37 Texas Crim. Rep., 90, and Lamar v. State, 49 Texas Crim., 563, were cases treating of such instruments and not the records of judgments of a court and they have no application whatever to this case. The other case he cites, Dunagain v. State, 38 Texas Crim. Rep., 614, has no application whatever to this question or to the record of either the judgment of the court or a private document between parties. We have stated in the original opinion the full of what the Dunagain case is and the decision of the court thereon.

We might collate the many decisions of the Supreme Court on this subject, all to the same effect, but instead of doing this, we merely refer to the notes under said two articles of the Revised Statutes cited above in either Batts' or Sayles' Annotated Revised Civil Statutes.

It is unnecessary to further discuss either of the other questions again presented by appellant in his motion for rehearing. We fully discussed and decided those questions against appellant in the original opinion.

The motion is overruled.

*Overruled.*