## LOUIS J. COY V. THE STATE.

No. 3209. Decided October 28, 1914.

Rehearing denied November 25, 1914.

### 1.—Bigamy—Burden of Proof—Mistake—Charge of Court.

It is not required by the law that an accused shall establish his defense beyond a reasonable doubt; and where, upon trial of bigamy, defendant claimed that he was laboring under a mistake of fact that his first wife had procured a divorce from him and that this did not arise from a want of proper care on his part, and offered testimony to that effect, the court charged the jury that if they believed from the evidence beyond a reasonable doubt, etc., that this mistake existed, to acquit the defendant, the same was reversible error, although the burden of proof was on the defendant.

### 2.—Same—Rule Stated—Burden of Proof—Reasonable Doubt.

There is quite a difference between the burden of proof, and the proof establishing a fact beyond a reasonable doubt, and while the burden to show a mistake of fact was upon the defendant, yet he was not required to show such mistake beyond a reasonable doubt.

### 3.—Same—Continuance—Practice on Appeal.

While the testimony of the absent witnesses was admissible, yet the cause being reversed on other grounds, this matter need not be considered.

**4.—Same—Evidence—Proper Care—Cross-examination—Decree of Divorce —Filing.**

Where, upon trial of bigamy, the defendant claimed that he labored under a mistake of fact that his second wife was divorced from him when he married his third wife, and introduced in evidence the contents of a letter to that effect, and that this mistake did not arise from a want of proper care upon his part, there was no error in permitting the State on cross-examination to introduce facts that he did not use proper care, and that the present wife was his third wife, and that in marrying his second wife he acted upon a certified copy of divorce from his first wife, which he did not do in his last marriage, as said certified copy of divorce was only introduced to show want of proper care on the part of the defendant, and not for any other purpose and was expressly so limited by the court, and the Act of Congress under which it would not have been admissible did not apply, nor was it necessary to file said decree. Following Clayton v. State, 67 Texas Chim. Rep., 311. Davidson, Judge, dissenting.

**5.—Same—Affidavit—Continuance.**

Upon trial of bigamy, there was no error in excluding from the evidence a doctor's affidavit as to the condition of an absent witness.

**6.—Same—Decree of Divorce—Charge of Court.**

Where, upon trial of bigamy, a decree of divorce from defendant's first wife was introduced in evidence to show a want of diligence on part of defendant in ascertaining whether he was divorced from his second wife at the time he married his third wife in Texas, although said decree was not properly authenticated and had not been filed with the records of the court, there was no error, nor in the court's failure to give a peremptory charge to acquit, as defendant admitted by his testimony that he was divorced from his first wife before he married the second wife. Davidson, Judge, dissenting.

Appeal from the District Court of Fayette. Tried below before the Hon. Frank S. Roberts.

Appeal from a conviction of bigamy; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Mathis, Teague & Embrey* and *C. G. Krueger,* for appellant.—On question of court's charge on burden of proof: Leonard v. State, 7 Texas Crim. App., 448; Sapp v. State, 77 S. W. Rep., 456; Melton v. State, 83 S. W. Rep., 822; Goodsoe v. State, 52 Texas Crim. Rep., 626, 108 S. W. Rep., 388; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64; Steel v. State, 55 Texas Crim. Rep., 388, 113 S. W. Rep., 15.

*C. E. Lane,* Assistant Attorney General, and *Sam C. Lowrey,* District Attorney, for the State.—Cited cases in opinion.

PRENDERGAST, Presiding Judge.—Appellant was convicted of bigamy. The indictment charged that he married Nellie May England in Camden County, New Jersey, on December 4, 1905, and had her for his wife, and while she was living, on May 1, 1912, in Fayette County, Texas, unlawfully married and had for his wife one Irma E. Heilig, and on and afterwards did unlawfully and feloniously have both of said women for his two wives at one and the same time.

Appellant's motions for a continuance were overruled and he was forced to trial on May 11, 1914. On the trial before the court and jury, he admitted the marriage to and having for his wife said Nellie May England as alleged, and while she was living married Miss Heilig, as alleged, and afterwards he had both of said women for his two wives at one and the same time and that both were living and are now living. He made these admissions subject to his defense. The State, upon this admission, which proved its case in full, rested.

Appellant's sole defense was that he was laboring under the mistake of fact that his said wife Nellie May had procured a divorce from him before he married Miss Heilig, and that this mistake of fact did not arise from a want of proper care on his part.

Under this condition the burden was on him to establish his said defense, for article 52, Penal Code, specifically enacts: "On the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission." See also the decisions noted under this article of the Code. There are many others to the same effect.

However, this provision, and no other, of the law requires that an accused shall establish his defense beyond a reasonable doubt. On this subject the court gave this charge:

"You are further instructed that, if you believe from the evidence in this case, *beyond a reasonable doubt,* that the defendant had been informed that his former wife was divorced from him when he married Irma E. Heilig, and if you further find that defendant believed such information to be true, and that such belief did not arise from a want of proper care on the part of the defendant, *or if you have a reasonable doubt as to whether the defendant was so informed and so believed,* then you will acquit him; however, should you find from the evidence in this case, beyond a reasonable doubt, that such belief, if any, on the defendant's part arose from a want of proper care on his part, then the defendant can not be acquitted on the ground of a mistake of fact." By a timely objection, properly made and evidenced by a proper bill of exceptions, appellant specifically excepted to this charge, among other reasons, because it placed a greater burden upon appellant than the laws of this State do as to the proof of his defense; and because it required greater and more conclusive proof of his defense than the law requires.

There is quite a difference between the burden of proof and the proof establishing a fact beyond a reasonable doubt. While appellant had the burden of proof to establish his said defense, he did not have to do so beyond a reasonable doubt which this charge, we think, clearly required, taken as a whole. For this error the judgment must be reversed.

The disposition of the case makes it unnecessary to pass upon whether or not the court erred in overruling appellant's motion for a continuance and not granting him a new trial after the conviction, because thereof. This matter doubtless can not arise on another trial. However, the

proposed testimony of Miss Heilig and the witness Barton would be admissible, as it was stated in said motion they would give.

The issue being as stated above, and after the State had rested, the appellant took the stand. He testified fully to the same effect as his admissions upon which the State rested. He then further testified to make out his defense that after he left his New Jersey wife and before he married Miss Heilig, his New Jersey wife wrote to him that she had procured a divorce from him. He claims he showed that letter to Miss Heilig and when he married her he turned that, with other letters from his New Jersey wife, over to her, and that that letter and others had been lost or destroyed. That he relied upon, and believed the statements in that letter and in good faith married Miss Heilig. As a necessary part of his defense he had to show this his mistake about his New Jersey wife having procured a divorce from him did not arise from a want of proper care upon his part to discover the truth. He undertook to do this by his testimony to a considerable extent, unnecessary and probably improper, to here state. When he was turned over to the State for cross-examination under such circumstances, clearly the State had the right to show that he had two children by this New Jersey wife, where they and their mother lived, and his knowledge thereof and his movements with reference to his traveling around and being in close proximity to them, so that the jury could determine whether or not he had the opportunity to ascertain the truth and that his mistake did not arise from a want of proper care on his part. Especially was this true on cross-examination, for this would materially aid the jury in arriving at a correct verdict.

Also clearly under the circumstances and in view of this testimony on direct examination and especially as to the contents of the letter he claimed to have received from his wife notifying him that she had procured a divorce from him, did the State have the right to cross him as to the contents of that letter and develop from him, if it could, that he was mistaken about the contents of that letter and it was not as he claimed, but otherwise.

On his cross-examination, the State further showed by him that before his marriage to his New Jersey wife he had married a woman at Saginaw, Michigan, and that prior to his marriage to the New Jersey wife he had been divorced from the Saginaw wife. For the purpose of showing the diligence he had used to ascertain the fact of his divorce from the Saginaw wife, the State, on his cross-examination, had him testify that prior to his marriage to the New Jersey wife his sister had written to him that his Saginaw wife, in effect, had a divorce from him and that she had remarried, and in the same letter in which she gave him this information, she also inclosed to him a certified copy of the divorce decree that his Saginaw wife had procured. The original paper thus sent to him by his sister and received by him was produced, identified by him as that paper and on the issue, and that only, of whether or not he had used proper care to ascertain whether his New Jersey wife had procured a divorce from him before he married Miss Heilig,

the court permitting that paper, the certified copy of the divorce decree by his first wife against him, to be introduced. It was admissible for that purpose, being so limited expressly by the court. It is just the same as if it had not been a decree of the court, but some other information received by him upon which he relied. It would not have been admissible in the condition it was under the act of Congress for the purpose of proving that he was legally divorced from the Saginaw wife before he married the New Jersey wife, and it was not offered for that purpose as expressly stated at the time and the court expressly stated it was not admissible for that purpose but limited it to the other purposes for which it was admissible. Without reference to the decree he swore that he had been divorced from the Saginaw wife before he married his New Jersey wife. So that it was unnecessary to introduce it for establishing that fact, he having sworn to it at the time. It was wholly unnecessary to file it and give three days notice of the filing to introduce it for that purpose or any other. Clayton v. State, 67 Texas Crim. Rep., 311, 149 S. W. Rep., 119. So that the court committed no error in any of these matters as complained of by appellant's bills.

The court did not err in excluding from the evidence the doctor's affidavit as to the condition of Miss Heilig, and, of course, did not err in refusing to give a peremptory charge to acquit appellant because of the proof that before he married his New Jersey wife he had been married to the Saginaw wife, the evidence by his own sworn testimony showing that he was divorced from the Saginaw wife before he married the New Jersey wife.

We have not undertaken to take up each of appellant's bills and discuss them, but what we have said applies to all the questions raised by them. For the error in the charge of the court, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Judge.—I concur. The cause is properly reversed. The other questions and answers in regard to the decree of divorce in Saginaw, Michigan, ought to have been sustained. Will write further on this question.

DAVIDSON, Judge (dissenting and partly concurring).—I concur in the reversal of the case, but believe my brethren are in error in not reversing the case on the last proposition discussed in the majority opinion. The State elicited, over the objection of appellant, that when he married the New Jersey wife he had a living wife in Saginaw, Michigan. Having proved this over the objection of appellant, the State introduced the decree of some court in Michigan showing the divorce. Various objections were urged to this which are acknowledged to be well taken. This decree was not properly authenticated so as to be used as the judgment of another State, nor was it filed with the records of the court so as to be used as evidence. Therefore, it was not evi-

dence in the case.  My brethren seek to avoid this by seeking to show it was introduced to show a want of diligence in ascertaining whether or not he was divorced from his New Jersey wife at the time he married in Texas.  I can not concur with that view.  When the marriage in Saginaw was proved, if the decree of the court showing a divorce prior to the time he married the New Jersey wife was relied upon, then it was necessary to have the decree properly certified as required by the statute under the Act of Congress in order to be used as evidence in the trial of this case, and was necessary to have it filed with the records of the court as required by the statute of this State, three days before the trial.  This was fully as damaging as any testimony introduced in the case.  When the Michigan marriage was proved this, of course, preceded the New Jersey marriage.  If at the time he married in New Jersey his Michigan wife was still living and undivorced, the New Jersey marriage was bigamous; and having alleged that marriage in the indictment as a legal marriage, it must be proved.  If the Michigan wife was living undivorced at the time he married in New Jersey, that was a bigamous marriage and that part of the indictment would not be sustained as it could not constitute a valid marriage.  So the importance of this decree as a fact in the case, was almost paramount, because the moment the proof of the Michigan marriage was introduced, the State, in order to prove the valid marriage in New Jersey, was compelled to get rid of, in some way, the Michigan marriage, because if that was existing,—a wife living and undivorced,—the New Jersey marriage was a nullity and the State would then lose its case at once.  This question was thoroughly adjudicated in McCombs v. State, 50 Texas Crim. Rep., 490.  In that case it was laid down as essential to the crime of bigamy that the preceding marriage, alleged in the indictment, must be a legal one and not illegal; and if that was a bigamous marriage, of course, this was not illegal, and that part of the indictment must necessarily fail. The court, it is claimed, undertook to limit this testimony to the proof of a want of diligence on appellant's part in ascertaining the fact that he was divorced from the New Jersey wife, but it was illegal testimony, and that being true, under all the decisions, the court can not by the charge, limit its effect.  The error can not be thus cured.  The illegality of admitted testimony can not be cured by changing its effect to some particular thought and effect in the case.  If that decree had not been introduced, the State, in this particular case, had failed to make out a case against the defendant.  I do not care to go over what was said in the McCombs case, supra.  That case reviews the authorities and correctly decides the question and is conclusive of this case on that question. Therefore, I can not agree with my brethren on that particular phase of their opinion.  If it only affected this case perhaps it would not make so much difference as it is reversed and will go back for trial in view of the decision, but the question may arise again.  The ruling of my brethren ought not to become a precedent.

I think the judgment ought also to have been reversed on these bills

of exceptions reserved by appellant.  Concurring in the reversal of the case, I dissent from that part of it, and file this brief statement.

[Rehearing denied November 25, 1914.—Reporter.]