## George McKay v. The State.

1. ASSAULT.—The pointing by one person of an unloaded pistol at another, within shooting distance, accompanied with an order to kneel down, which, through fear, is obeyed, will not, under the Criminal Code of this State, constitute an assault. (Paschal's Dig., art. 2144.)

2. There is a marked difference between the legal injury resulting from the act and intent of the assailant in the attempt to commit a battery, and in the actual injury of shame or fear in the mind of the assailed, that may have been intended and produced by the act of the assailant.

3. To effect the legal injury indictable as an assault the assailant must have the ability to commit a battery by physical violence on the person by the means used.

4. The actual injury of shame or fear in the mind of the assailed is not a necessary element in the offense of an assault, and the legal injury can exist as well without it as with it. When the actual injury of shame or fear is shown to have been produced, it is pertinent only as aggravation of the legal injury.

5. The capacity to do the violence upon the person by the means used are equally implied and necessary in assault as in a battery, and the actual suffering of pain, constraint, shame, or other disagreeable emotion of the mind on the part of the individual assailed, is equally unnecessary as an independent fact, and its non-existence, if proved or admitted in any case, would not be a full defense to an action either civil or criminal.

APPEAL from Gaudalupe. Tried below before the Hon. John P. White.

George McKay, while carrying a pistol, which was unloaded and out of repair, let it fall accidentally as he was riding along the road. Upon this Dan Duke, who was near, laughed at the accident when he saw McKay dismounting to recover it. Upon observing this McKay said to Duke, "I am the worst man in all these parts, and would as soon shoot you as not," at the same time ordering Duke to kneel down, which he did, as he stated, through fear. The parties were about six paces apart.

Verdict, guilty of an assault, and fine of twenty-five dollars.

The errors assigned were the charge given by the court and the refusal of charges asked by defendant, both of which will be found in the opinion.

*George Clark, Attorney General,* for the State.

In order to ascertain the true meaning and import of the latter clause of article 2144, Paschal's Digest, it should be considered in connection with the several articles of the code immediately preceding this, and which relate to assault, and battery and assault, beginning at article 2137, Paschal's Digest.

What is an assault and battery? It is unlawful violence used upon the person of another with intent to injure him; or, in other words, to inflict an injury upon him. (See Paschal's Dig., art. 2137.)

What is meant by injury? The injury meant or intended may be either bodily pain, constraint, a sense of shame or other disagreeable emotion of the mind. (See Paschal's Dig., art. 2138.)

What means are necessary to be used to constitute an assault or assault and battery? Any means used by the person assaulting  *  *  *  which is capable of inflicting an injury comes within the definition of an assault or assault and battery, as the case may be. (See Paschal's Dig., art. 2141.)

To constitute an assault there must be an attempt to inflict an injury upon another, (which injury may be either bodily pain, constraint, a sense of shame or other disagreeable emotion of the mind,) showing an immediate intention, coupled with the ability, to inflict the injury intended.

How can it be determined whether the act done is coupled with the ability to inflict the injury or not? If the means used by the person assaulting is capable of inflicting the injury that he intends to inflict, taking into consideration the manner in which the instrument is used or employed, this certainly establishes the fact that the act is coupled

with the ability to perform it.  If, however, a party should attempt to shoot another with an unloaded gun or pistol, and injuring him by shooting him, such attempt to injure would not in that case be coupled with the ability to do the act attempted or inflict the injury intended, and, therefore, would not constitute an assault, notwithstanding the unloaded gun or pistol might be pointed directly at the party sought to be injured.  Pointing an unloaded gun, or the use of any like means with which no injury can be inflicted, cannot constitute an assault.  (See Paschal's Dig., art. 2144.)

This clause of the code was not inserted for the purpose of declaring the fact that the act of pointing an empty gun was not an offense against the law, but was introduced as an example, and for the purpose of illustrating this idea, that the means used should be such as is capable of accomplishing the purpose for which it was intended, and that the use of this or any other like means with which (considering the manner in which it is used or attempted to be used and the injury sought to be inflicted) no injury could be inflicted, would not, when thus used, constitute an assault. Where an empty gun or pistol is pointed at a person for the simple purpose of shooting, it is, of course, perfectly harmless; but when used as a bludgeon it may be a very dangerous weapon, and when pointed at a person in a threatening manner by one who declares his intention to use it, unless the party against whom it is pointed consents to kneel down and submit to such terms as the party using it may dictate, and if the party against whom it is used does not know whether it is loaded or not, he will under the circumstances naturally conclude that it is loaded, and in such cases it is as well calculated to produce feelings of constraint, shame, or other disagreeable emotions of the mind as if loaded.  It is not the mere pointing of the pistol that constitutes the offense, but if it is thus pointed and accompanied by acts and threats that cause feelings of

constraint, shame, &c., then an injury is inflicted, and the offense becomes complete.

This construction is in harmony with the authorities of other States, which seem to hold " that there must be some adaptation of the means to the end, and it is enough if this adaptation be apparent, so as to impress or alarm a person of ordinary reason." (See 2 Whart. C. L., secs. 1244 and 2694, 7 ed., citing Kemble *v.* State, 32 Ind., 220; Mullin *v.* State, 45 Ala., 43; Taver *v.* State, 43 Ala., 354; Johnson *v.* State, 26 Ga., 611; Allen *v.* State, 28 Ga., 395; Corn *v.* McDonald, 5 Cush., Mass., 365; State *v.* Rawles, 65 N. C., 334.)

In Tennessee and Iowa it is expressly held that pointing an unloaded gun at a party is an assault. (See State *v.* Smith, 2 Humph., 457; State *v.* Sheperd, 10 Iowa, 126.)

The English authorities are not uniform. In 1840 Parke, B. intimated that pointing an unloaded gun was an assault. (See R. *v.* St. George, 9 C. & C., 483, 38 Eng. C. L. R., p. 288.)

During the same year a contrary ruling was made in a civil action. (See Blake *v.* Bernard, 38 Eng. C. L. R., p. 315.)

In 1843 a doubt was expressed upon the point. (R. *v.* Baker, 47 Eng. C. L. R., p. 253.) And in 1844, Tindall, C. J., held directly that it is an assault only when the pistol pointed is loaded. (R. *v.* Junes, 47 Eng. C. L. R., p. 529.)

Mr. Wharton, in the first edition of his valuable work on Criminal Law, lays down the rule one way, (see 10 Iowa, 130;) and in his seventh edition, the other way. (Whart. C. L., sec. 1244, 7 ed.)

Under the several provisions of our statute (above discussed) the rule seems to be clear that an assault can be committed by pointing even an unloaded gun.

Roberts, Chief Justice.—The charge of the court, which presents the main issue in the case is as follows:

"If the jury believe from the evidence that the defendant pointed an unloaded pistol at Daniel Duke, (within shooting distance, if the pistol had been loaded,) with intent to frighten him, at the same time ordering him to kneel down, and that the said Duke, not knowing that said pistol was not loaded, was made to feel afraid, and caused to kneel down, the defendant is guilty of an assault."

This charge was given at the instance of the district attorney, the facts in proof being substantially in correspondence with it. The defendant's counsel asked three charges, to wit: that if the pistol was not loaded, or if defendant could not shoot Duke with it, or if he did not intend to shoot him, he could not be convicted; which were all refused by the court. The defendant was found guilty of a simple assault, and fined twenty-five dollars. He moved for a new trial because of the refusal of these charges, and that the verdict was not warranted by the evidence, &c., as well as on other grounds, which being overruled, he gave notice of appeal.

This charge above set out, and the refusal of the counter charges, are the main matters deserving notice on the appeal.

This charge makes an apparent attempt to commit a battery by McKay, which produces the feeling of shame or fear in the mind of Duke, an assault. This is believed to be erroneous, because, the pistol of McKay being unloaded, it was impossible for him to have committed a battery upon the person of Duke, and because the actual injury in mind, such as shame or fear, suffered by Duke, which was caused by the apparent attempt of McKay to commit a battery on his, Duke's, person, is not a legal injury that constitutes an assault, it being shown that, by the means used, McKay did not have the ability to commit a battery.

These propositions, it is believed, can be maintained by

a due consideration of the provisions of our penal code that define and explain the offenses of assault and of assault and battery, which will lead to three important conclusions having reference to this case:

1st. That there is a marked difference between the legal injury resulting from the act and intent of the assailant, in the attempt to commit a battery, and in the actual injury of shame or fear in the mind of the assailed that may have been intended and produced by the act of the assailant.

2d. To effect the legal injury indictable as an assault the assailant must have the ability to commit a battery by physical violence on the person by the means used.

3d. The actual injury of shame or fear in the mind of the assailed is not a necessary element in the offense of an assault, and the legal injury can exist as well without it as with it, and when shown to have been produced it is pertinent to the case only as matter of aggravation to the legal injury.

An assault is an attempt to commit a battery. The variation in the terms contained in the definition are only different modes in stating the same thing. The definition is that "any attempt to commit a battery, or any threatening gesture, showing in itself or by words accompanying it an immediate intention, coupled with an ability to commit a battery, is an assault."

Thus is it necessary to understand precisely what it takes to constitute a battery. The definition is, "the use of any unlawful violence upon the person of another, with intent to injure him, whatever be the means or degree of violence used, is an assault and battery."

This definition makes it necessary that two things should concur—one physical, the other mental—an act and an intent accompanying it, on the part of A, when he commits a battery on B, each of which requires a particular examination separately.

As to the physical act done by A, let it be supposed

that A strikes B a blow with a stick on the head, and wounds him by a bruise that is painful; it is the blow given by A, and not the wound left on the head of B, that constitutes the physical act that is meant in the first part of the definition by the expression "use of violence upon the person of another." Violence upon the person, as here used, means the force upon the person, referring to the act of A in using it on the person, and not to the intended effect on B in receiving it on his person; for the existence of the pain, or shame, or other disagreeable emotion of the mind, on the part of B, as the effect or result of the blow on his person, is wholly immaterial, and need not be proved, and when proved in any case is proved only as an aggravation of, and not as a necessary fact to, the complete establishment of the battery. The means used by A to exert the force on the person of B may be anything capable of producing physical force, as the hand, the foot, a stick, a rock thrown by him, or a bullet shot out of a gun or pistol by him, so as to take effect on the person, however slight. Hence, it is described in the books by the expression "the least touching of the person of another," the word touching having reference to the act of A that took effect on the person of B, and not to the bodily or mental sensation of B produced by it, further than that it did touch him. The case above supposed presupposes and evinces that A has had the physical capacity to do the act, and also embraces the additional element that he intended to do it, or that in the act of doing it he intended to do something else, which was done so negligently or carelessly or recklessly as to be tantamount in law to the intention to do what he did; otherwise the act would be purely accidental, and therefore not culpable.

In addition to the physical act done by A, with the accompanying intention, direct or indirect, as just specified, it must also be done "with the intent to injure" B, in order to render the battery unlawful. This injury, in-

tended by A, the assailant, may be to the mind of B, as well as to his person.  Our criminal code provides that "the injury intended may be either bodily pain, constraint, a sense of shame, or other disagreeable emotion of the mind."

It is not to be understood, however, that the effects upon the body and mind here enumerated as examples embrace all of the effects that may be intended by A, the assailant, to be produced on the body or mind of B by the act of A in committing a battery upon him.  For in the same article it is said, "when an injury is caused by violence to the person, the intent to injure is presumed, and it rests with the person inflicting the injury to show the accident or innocent intention."  Thus, in a battery, when A has used physical force upon the person of B, the combined intention to do the act and to injure him by doing it, thus embracing all of the intents necessary to complete the offenses, whatever they may be, is presumed in law as against A, unless it be shown that the act done by him was purely accidental, or that the intention with which the act was done by A was innocent.

As in a case of homicide, the act of killing being proved, the malicious intent is presumed, and the legal injury is held to be consummated, whatever may be the one of thousands of motives that might have prompted the act, or whether any motive or specific intent can be discovered or not, unless some evidence can be adduced establishing a mitigation, excuse, or defense.

In assault and battery, the necessary act, to wit, the "use of violence upon the person of another," is easily understood.  But the necessary "intent to injure him" is not so easily explained by an affirmative description.  Still, the necessary act being proved, the necessary intent to injure is known to exist as a legal necessity, whether we can discover, understand, or explain it or not, so that the two concurring will constitute the legal injury of assault and

battery, unless it be shown that the act was accidental or the intention was innocent. It may, therefore, be said that, practically, in legal contemplation, the proof of the necessary act either is or carries with it the proof of the necessary intention to injure, so as to constitute the legal injury, unless it is rebutted by evidence showing that the legal presumption should not be indulg·d, which may not be by showing an absence of intention to injure, but by showing that the intention was innocent with which the act was done.

This provision, for presuming an intent from the proof of the act, pervades the whole criminal law, and is found prescribed in our Criminal Code as follows:

"Art. 1654. The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act."

"Art. 1655. On the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves on the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission." (Paschal's Dig., pp. 399, 400.)

The terms "intent to injure" as part of the definition of an assault and battery, like the word malice in that of murder, cannot be described in its full scope and meaning by an affirmative description only; and hence it is necessary to give an explanation of it so as to embrace any and every intent with which the act of violence upon the person of another is committed which is not shown to be an innocent intent, thus giving a negative as well as an affirmative description of what is meant, both of which is done in our code. (Paschal's Dig., art. 2138.)

Still it is not necessary in assault and battery that any of the actual injuries that are expressly mentioned in the code should be felt or experienced in body or mind by B, the party assailed, as the result of the act of A making the blow on the person of B, but the assault and battery and

legal injury are complete if A intended any such injury in striking the blow, and the law makes him intend the injury of some sort, unless the act is accidental or intent is innocent, and is so shown to be.

It follows necessarily, then, that what A did and intended to do, as proved or presumed, is what the law regards as the test of the legal injury in determining whether or not the offense of unlawful assault and battery has been committed, and not the fact of the pain, or constraint, or sense of shame, or other disagreeable emotion of the mind of the party upon whose person the force has been used by the assailant. For the law regards the least touching of the person of another, unless accidentally or innocently done, an injury to society—to the State—whether the individual touched has thereby suffered the actual injury, either in body or mind, intended by the assailant or not.

An assault by A upon B embraces all of the elements of an assault and battery on him, with the single exception of the want of completeness in the performance of the act commenced by A to be done, which, if completed, would have been a battery.

An assault is an attempt to commit a battery; and "an attempt is, according to common legal understanding, an intent to do a thing combined with an act which falls short of the thing intended." (1 Bishop's Cr. Law, sec. 659.) The capacity to do the violence upon the person by the means used are equally implied and necessary in assault as in a battery; and the actual suffering of pain, constraint, shame, or other disagreable emotion of the mind, on the part of the individual assailed, is equally unnecessary as an independent fact, and its non-existence, if proved or admitted in any case, would not be a full defense to an action, either civil or criminal. This attempt is fully described in our code, so as to embrace every supposable mode of assault, as follows: "Any threatening gesture, showing in itself, or by words accompanying it, an immediate intention, coupled

with the ability to commit a battery, is an assault." It must be noticed that this does not say "intention coupled with the ability to commit" an *injury* on the individual, but "intention coupled with the ability to commit a *battery*" on him, which embraces the ability and the intention to use violence upon the person of the individual and also the intention to thereby inflict injury of body or mind on him, as heretofore explained as being either proved or presumed.

Nor does it say any threatening gesture, showing in itself, or by words accompanying it, an immediate intention, coupled with an apparent ability, to commit a battery, substituting in law the appearance of an assault for an assault in fact. To prevent such a construction the code provides that " by the terms 'coupled with an ability to commit,' as used in article 475, is meant—

"1. That the person making the assault must be in such a position that, if not prevented, he may inflict a battery on the person assailed.

"2. That he must be in such distance of the person so assailed as to make it within his power to commit the battery by the use of the means with which he attempts it."

And, lest that should not be plain enough, it is added that "it follows that one who is at the time of making an attempt to commit a battery under such restraint as to deprive him of the power to act, or who is at so great a distance from the person assailed as that he cannot reach his person by the use of the means with which he makes the attempt, is not guilty of an assault." And not still satisfied with that, it is added that " pointing an unloaded gun, or the use of any like means with which no injury can be inflicted, cannot constitute an assault."

The word injury, as used in this last sentence, means that legal injury produced by an intentional use of force on the person of another, and not the actual injury of pain, or constraint, or shame, or other disagreeable emotions of

the mind in the person assailed.   For, if the legal injury
of violence to the person was inflicted by the means used,
it would not be material that it should produce the actual
injury of body or mind, such as shame, fear, and the like,
provided any injury was intended.   The word injury is
used in these two different senses, in the explanations of
this offense, from which arises the only obscurity or uncer-
tainty attending the subject; but all which, it is believed,
is susceptible of an easy explanation in harmony with
the principles that have been announced.   For instance,
" when an injury is caused by violence to the person, the
intent to injure is presumed, and it rests with the person
inflicting the injury to show the accident or innocent in-
tention."   Here it is the legal injury that is caused by the
violence to the person and from which the intention to
commit the actual injury of body or mind of the person
assailed is presumed.

And again: "Any means used by the person assaulting,
as by spitting in the face or otherwise, which is capable of
inflicting an injury, comes within the definition of an as-
sault, or an assault and battery, as the case may be."   Here
it is used in the sense of a legal injury, caused by physical
violence used or attempted on the person, as it is in the
article last quoted.   This is so inferred from the example
given of physical force, as spitting in the face, as well as
those given in the preceding article, all of which, as enum-
erated, are appropriate means for inflicting physical force
upon the person; and none of them that are enumerated
are appropriate means, such as words, threats, hostile
appearances, or the like, calculated to produce a moral
or mental force upon the mind of the person assailed.

Threats and hostile appearances would often be as
appropriate means of producing the actual injury of con-
straint, shame, or other disagreeable emotions of the mind,
as blows with the hand, and frequently more so, and it is
hardly to be supposed that they would have been omitted

in the very careful enumeration of the means that could be used in committing an assault or assault and battery.

In this review of the provisions of the code, it is not intended to lay down authoritative rules, as applicable to other cases coming under the articles reviewed, which are not directly applicable to this case, but to present general views preparatory to the proper consideration of the main question here now, which is, what is the legal effect of the pistol being unloaded?

Now, to apply these principles, so far as applicable, as deduced from our Penal Code, to the facts of this case, and to the charge of the court thereon, McKay pointed an unloaded pistol at and threatened to shoot Duke, ordering him to get on his knees, which he did. This was an act in itself, and coupled with words showing an intention to shoot him, with the intent to put him under constraint, and to produce shame or other disagreeable emotion of his mind. It was clearly an apparent assault, and to Duke, who was doubtless ignorant that the pistol was unloaded, it was calculated to and did excite fear and a reasonable apprehension of death or serious bodily injury, and was so intended by McKay. It falls short of an assault under our code, because it is expressly declared therein that pointing an unloaded gun at a person cannot be an assault, giving the reason, in the same connection, that it is a means with which no injury can be inflicted, and it might be added, that the person pointing the gun, knowing it to be unloaded, could not possibly intend, then, to shoot the person pointed at.

The injury that such an act cannot produce is the legal injury of physical violence to the person of the individual pointed at, in contradistinction to the actual injury of him by constraint, shame, or other disagreeable emotion of the mind, which latter injury it most assuredly could, and generally would, be almost certain to produce. If it had been intended to make this actual injury of constraint or

fear, when produced by any adequate means, the test of the criminality of the act producing it, surely the Legislature would not have picked out the pointing of a gun, though unloaded, as the one to exempt, as a means that could not produce it, which act, above all others, most commonly produces that effect, when it is not known by the person pointed at to be unloaded. Yet it is so declared, without qualification, condition, or exception, that "pointing an unloaded gun cannot constitute an assault."

Seriously threatening a man to kill him, done in anger, is well calculated to produce the same effect, generally in a lighter degree only, and it is not enumerated as one of the means that can produce the legal injury that is indictable as an assault. Both together, pointing the unloaded pistol and the threats, as in this case, would not alter the nature of the actual injury of constraint or fear, or disagreeable emotion, but could only increase it in degree, which increase is only a matter of aggravation, and cannot be made a distinct ground of legal injury when neither the pointing the unloaded pistol nor the threats separately can amount to a legal injury. (See Criminal Code, from arts. 2137 [475] to 2148, [486,] both inclusive, Paschal's Dig.) As the acts and words of McKay put Duke under constraint, it may amount to false imprisonment, which may be accomplished by threats and various other means not amounting to and do not therefore necessarily include an assault. (Paschal's Dig., art. 2169, [508.]) When "words are used, which are reasonably calculated to produce and do produce an act which is the immediate cause of death, it is homicide" committed by the person using them, and is then of such serious consequence that the law takes notice of the words as constituting the cause of the death. (Paschal's Dig., art. 2207, [546.]) There is no provision giving such or similar effect to mere words in the minor offenses, such as assault.

Whether pointing an unloaded gun or pistol is an

assault, when the person pointed at is ignorant of the fact of its being unloaded, has long been a mooted question, which has been decided both ways by the courts in both England and America, and as a question at common law, in reference to all of the decided cases bearing upon it, civil and criminal, it is one of difficulty that has often been liable to changes of opinion and decision, as may be seen by reference to the numerous cases cited in the elaborate brief of the attorney general in this case, for the definite settlement of which long continued conflict, it may be presumed, it was positively and unqualifiedly declared in the Penal Code that "pointing an unloaded gun or the use of any like means, with which no injury can be inflicted, cannot constitute an assault," which would be imperative on this court had all the decisions, both in England and America, been one way, and that against this rule, instead of being vacillating and conflicting as they have been.

Mr. Bishop, in his most valuable work on criminal law, says, "an assault is any unlawful physical force, partly or fully put in motion, which creates a reasonable apprehension of immediate physical injury to a human being." (2 vol., sec. 32.)

In the explanations of the different parts of the definition he says in reference to the peril or fear, "there is no need that the party assailed be put in actual peril if only a well-founded apprehension of danger is created," "for the suffering is the same in one case as in the other, and the breach of the public peace is the same." He then gives the pointing an unloaded pistol as an instance, and says "there must be in such cases some power actual or apparent of doing bodily harm, but apparent power is sufficient."

This makes an apparent force sufficient if it creates a well-grounded apprehension of peril in the party assailed, and is believed to be contrary to the provisions of our code in two respects, to wit, the apparent force is made tanta-

mount to the actual, and the well-grounded apprehension of peril on the part of the assailed is made one of the elements of assault, whereas, by our code, if on the part of the assailant, the act, coupled with the necessary intent to injure, as proved or presumed, is sufficient, it is immaterial whether or not fear of danger or well-grounded apprehension of peril is created on the assailed, or even whether he was aware of the attempt or not.

If the pistol had been loaded and otherwise in condition to shoot when it was intentionally pointed at Duke within a distance that it would take effect if discharged, the manifestation of anger and the threats of McKay would have constituted extraneous and affirmative evidence of an express intention to injure necessary and sufficient to make the assault complete. So, too, the pointing the pistol alone, under like circumstances, if loaded, without the manifestation of anger and the threats, would of itself carry with it the presumption of the necessary intention to injure. Such act intentionally done by McKay would have put in imminent danger the life of Duke, who had given him no just cause to do it, and it is difficult to imagine how it would be possible to show McKay's intention in doing such an act to be innocent.

But on the other hand the pistol being unloaded, the pointing of it was not an act, nor the commencement of an act, that could possibly have resulted in a battery by such a use of it, and, therefore, the act necessary as an ingredient in an assault was totally wanting. For the error in the charge of the court the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Associate Justice IRELAND did not sit in this case.]