### Joe Ward v. The State.

No. 1754. Decided November 13, 1912.

Rehearing denied December 18, 1912.

#### 1.—Assault With Intent to Rape—Continuance—Want of Diligence.

Where, upon trial of assault with intent to rape, the trial court was justified in holding that no diligence was used to procure the attendance of the absent witness, and to believe that he was not present by the consent, if not the procurement, of defendant himself, for the very purpose of obtaining a continuance on account of his absence, the same was properly overruled, and there was no error, although this was the first application.

#### 2.—Same—Sufficiency of the Evidence—Aggravated Assault.

Where, upon trial of assault with intent to rape, the defendant was convicted of aggravated assault, and the evidence showed that the jury was justified in finding that the defendant committed an assault and battery upon the prosecutrix in the house and residence of her father, the conviction was sustained.

#### 3.—Same—Charge of Court—Case Stated—Sufficiency of Evidence.

Where, upon trial of assault with intent to rape and a conviction of aggravated assault, no charge on circumstantial evidence was requested and none was given, but a charge applicable to the facts in the case was submitted and the evidence showed an assault and battery, with intent to injure was committed by defendant upon prosecutrix in her father's private residence, the conviction was sustained.

#### 4.—Same—Definition of 'Assault and Battery—House of a Private Family—Intent to Injure.

Under article 1008, Penal Code, it is expressly provided that the use of any unlawful violence upon the person of another with intent to injure him

whatever be the means or degree of the violence used is an assault and battery, and under article 1009, id., the intent to injure is presumed when an injury is caused by violence to the person.

**5.—Same—Aggravated Assault—House of a Private Family.**

Under article 1022, Penal Code, an assault or battery becomes aggravated when the person committing the offense goes into the house oi a private family and is there guilty of an assault and battery, and the court did, therefore, not err to sumbit under the facts in the case a charge on aggravated assault.

**6.—Same—Argument of Counsel—Bill of Exceptions.**

Where the bill of exceptions did not point out how the argument ,of State's counsel was objectionable except merely to complain of the language used, the same was insufficient; besides, no charge was requested to withdraw the alleged objectionable argument.

**7.—Same—Argument of Counsel—Absence of Witness.**

A comment by State's counsel upon the absence of defendant's witness is not reversible error under the facts of this case.

**8.—Same—Special Charge—Motion for New Trial.**

Where a special charge is requested and refused by the court and the bill of exceptions fails to show why it should have been given, the same can not be considered on appeal. Following Ryan v. State, 64 Texas Crim. Rep., 628, and other cases.

**9.—Same—Charge of Court—Misdemeanor.**

Unless the charge of the court is excepted to at the time and a special charge requested in writing, the same can not be reviewed on appeal in misdemeanor cases.

**10.—Same—Assault to Rape—Aggravated Assault—Degrees of Offense.**

Where defendant was indicted for assault with intent to rape, etc., and convicted of aggravated assault, the contention that in the absence of allegations in the indictment that' an assault and battery was committed in a private residence the conviction could not be sustained is untenable under article 771, Code Criminal Procedure, which provides that the defendant can be convicted of any degree inferior to that charged in the indictment or information.

**11.—Verdict—Statutes Construed.**

Under article 837, Code Criminal Procedure, a verdict is not contrary to the law and evidence where defendant is found guilty of an offense of an inferior grade to, but of the same nature as the offense proved.

Appeal from the District Court of Frio. Tried below before the Hon. J. F. Mullally.

Appeal from a conviction of aggravated assault; penalty, a fine of $100 and twelve months confinement in the county jail.

The opinion states the case.

*Jno. T. Bivens* and *DeMontel & Fly* and *Hicks, Hicks & Teagarden,* for appellant.—On question of refusing continuance: Leonard v. State, 53 Texas Crim. Rep., 187, 109 S. W. Rep., 149; Foster v. State, 52 Texas Crim. Rep., 137, 105 S. W. Rep., 498; Yantis v. State, 49 Texas Crim. Rep., 400, 94 S. W. Rep., 1019; Casey v. State, 51 Texas Crim. Rep., 433, 102 S. W. Rep., 725; Hardin v. State, 52 Texas Crim. Rep., 238, 106 S. W. Rep., 352.

On question that the verdict was contrary to the law and the evidence: Pederson v. State, 1 S. W. Rep., 521; Dickenson v. State, 5 S. W. Rep., 648.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—On September 28, 1911, the grand jury of Frio County, indicted the appellant in three counts—first, for an assault with intent to rape Annie Lee Burgin; the second, for an attempt to have carnal intercourse with her without her consent, said attempt not constituting an assault with intent to commit rape; and third, with burglary at night of the house of T. I. Burgin, actually occupied as a private residence by him and his family, without his consent and with intent by force, etc., to have carnal knowledge of said Annie Lee Burgin without her consent, she not being his wife. On the trial, all of these counts were submitted to the jury, and so was an aggravated assault. The jury convicted appellant of aggravated assault and fixed his penalty at a fine of $100 and twelve months in jail.

It is unnecessary to give any extended statement of the evidence. It, however, shows that the appellant, a young man eighteen or nineteen years old, went with his cousin, to the residence of T. I. Burgin at night as the guest of Burgin with the avowed purpose and intent on the part of appellant to have sexual intercourse that night with Annie Lee Burgin, the young daughter of T. I. Burgin. He claims and testified that along in the night shortly before midnight and before he and his cousin and some two brothers of the girl and the girl herself, went to bed, he had a private interview with the girl and got her consent to have sexual intercourse with him that night, and that about two o'clock that night, after having made two attempts previously to reach her, he did so for the purpose of having intercourse with her with her consent. The testimony for the State, by the girl and her two brothers, excludes the idea that appellant had the opportunity or procured her consent. Her mother was away from home. The girl was the only female of the family present that night. The way the house, the beds and the rooms were situated, it made it proper, if not necessary, that she should sleep in the rear room of the house, the other members of the family in other rooms and one, if not two of her brothers, with the appellant and his cousin on beds made down for them respectively on the front gallery of said Burgin's residence. That appellant went into the room where the girl slept for the purpose of having intercourse with her, is shown, without question, testified to by appellant and in no way disputed. Her older brother, whose bed was on the gallery, having had his suspicions aroused by the acts and whispered conversation of the appellant and his cousin, listened and watched appellant's movements, and when appellant, for the second or third time, falsely pretending to get up and go to the rear of the

house towards where the girl slept for the purpose of attending to a call of nature, heard him in the room and on the bed, hearing this by the creaks of the bed, hurriedly arose from his bed on the front gallery, went back through the house, opened the door of his sister's room, struck a match and discovered the appellant in bed with his sister. This brother on this point, among other things, testified that when he pushed the door of his sister's room open and struck a match he discovered appellant on the bed with his sister, his sister being on the front side of the bed and appellant on the back of it; that appellant, when this occurred, came over his sister and she jumped up and he, the witness, holloed for his father; that appellant was undressed, only having on his shirt and drawers; that when he opened the door and saw appellant, his sister was on the side of the bed between him and the appellant, the appellant being on the far side of the bed next to the window; that appellant was then leaning with his right elbow down, facing the witness, something like he was trying to brace himself to raise up, or to brace his head about half up; that his sister's and appellant's heads were at the same end of the bed; that when he struck the match appellant just came rolling over his sister; that his sister jumped up, but appellant got up before she did and jumped out and ran out at the door. That when he looked in he could not tell whether appellant was touching his sister in any way or not, he was lying close to her, right by the side of her, he could not tell whether he had his hands on her or not; that his right hand was like this (illustrating); that he could not tell how his left hand was; that he did not know where his other hand was.

On this point Annie Lee Burgin testified that when she lay down on the bed that night, it being quite late, she pulled off her shoes and lay down on the bed with her clothes on and went to sleep; that when her brother holloed she felt appellant rolling over her and that was all she knew; that she felt appellant rolling over her. Again, she testified that when she was awakened by her brother holloeing and striking the match, appellant was crawling over her and that was the first thing she knew. That appellant went over her; that he was lying on the bed between her and the window and that he just crawled over her; that she did not know whether with his hands and feet or not; that she was frightened and could not say.

Appellant, himself, testified, among other things, that he and his cousin, after they supposed Annie Lee Burgin's brothers were asleep, got up and went around the house and located where the girl was sleeping and that her brother having detected them around there, he and his cousin came back and went to bed again on the gallery; that still later, supposing her brother was asleep, he alone got up and went around to the window where the girl was asleep; that he whispered to her and could not wake her up; that he could not reach her and had to get a little stick and touch her, call her attention, to wake her up, and that when she woke up she rolled over on the side of the bed

close to the window and he had some conversation with her, and that she later got up and opened the door of the room for him and that he went in that way. She disputed all of that testimony by appellant. Again, appellant testified that after he and his cousin had gone around and peeped in the window and saw where the girl was sleeping, they came back to bed and that he alone got up the third time about 1 or 2 o'clock and went to the window and whispered, supposing she was asleep—she made out she was asleep, if she heard she never answered, and then he went and got a stick and touched her and she awoke; that he touched her with a stick; that he talked to her at the window and she rolled over to the window close to him where they whispered together and talked. Then he claims she got up from the bed, opened the door and he went into the room and got on the bed from that way and not through the window.

Appellant's first complaint is that the court committed reversible error in overruling his application for continuance on account of the absence of his said cousin, Monroe Ward, who was with him on the night of this claimed assault, and that he expected to prove by him that they were together at the residence of the prosecutrix on the night of the alleged assault, and that Monroe interviewed the prosecutrix in his behalf and obtained her consent that he, appellant, should on that night have intercourse with her on the premises. On the trial appellant testified he himself interviewed her and got her consent. That she only wanted to see his cousin before she went to bed. The record shows that the appellant was indicted on September 28, 1911, the indictment returned into court about 4 o'clock that evening, and that he was arrested about 5 of the same evening, and that he immediately made an application to the clerk of the court for a subpoena for said Monroe who resides in Medina County, to appear on October 3 following, being the day on which the case was set for trial. It is shown that this subpoena was promptly issued and sent (mailed) to the sheriff of Medina County, received by him the next day and returned and filed before the case was called for trial, showing that the witness Monroe Ward was not to be found in Medina County. The State contested by affidavits and by the district attorney the diligence for this witness and showed that the appellant and his said cousin, Monroe Ward, were together in the city of Pearsall in Frio County, where the prosecution was had and indictment found, and that they were so together in Pearsall after indictment found and the case had been set for trial and that they had so been together, both in the forenoon and afternoon of said date in Pearsall. Appellant in no way disputed the contest of the district attorney, or in any way disputed the affidavits of the parties showing the facts above. Neither did the appellant, in his motion for new trial, in any way contest the facts set up by the district attorney and shown by affidavits in opposition to his motion for continuance, nor did he procure the affidavit of said absent witness to what he would testify nor why he was not present

on the trial. Appellant is not entitled, in law, to a first, nor any other continuance. It is all in the discretion of the court. In our opinion, there was no error by the court in overruling this motion for continuance, nor in not granting a new trial because thereof. We think the court was clearly justified in holding that no diligence was used to procure this witness and to believe that he was not present by the consent, if not the procurement, of appellant himself for the very purpose of obtaining a continuance on account of his absence. Besides, the record clearly shows that the cause was called for trial and the trial begun on October 3, 1911; that it continued until some time during October 6. The witness is shown to have lived only seventeen miles from Pearsall, the county seat of Frio County, where the trial occurred. The return of the sheriff of Medina County on the process issued to that county is shown to have been made on the 2d day of October, 1911, returned and filed in the trial court October 3, 1911. No other process whatever was issued, nor was the attendance of the witness attempted to be procured after the overruling of appellant's motion for a continuance. Doubtless, if process had then been issued for the witness to Frio County where he unquestionably was when the subpoena was issued he could and would have been obtained in the first instance if he had not been run off and kept away by the appellant for the purpose of procuring a continuance. Or if other process had been issued on the return of the first, he would have been secured before the trial concluded. Giles v. State, 66 Texas Crim. Rep., 638, 148 S. W., 317, and authorities therein cited.

Appellant's next contention is that the verdict of the jury was contrary to the law and the evidence, and that the evidence does not show that the appellant committed any assault and battery on the prosecutrix and if so, no intent to injure her. We have given the substance of some of the testimony on this subject above in the statement of the case. That together with the other evidence in the case, in our opinion, would have justified the jury to believe and find that the appellant did commit an assault and battery upon the prosecutrix in the house and residence of her father. No charge was asked and none given on circumstantial evidence and no complaint whatever in any way made because such charge was not given. We think the whole trend of the testimony, together with and in addition to that stated above, would justify the jury in finding, as stated above, that an assault and battery with intent to injure was committed by appellant in the prosecutrix' father's house and in response to the correct and specific charge of the court on the subject.

Our statute, Penal Code, article 1008, expressly enacts that "the use of *any* unlawful violence upon the person of another with intent to injure him, whatever be the *means or degree* of the violence used, is an assault and battery." The next article, 1009, is "When an injury is caused by violence to the person, *the intent to injure is presumed* . . . The injury intended may be either bodily pain, constraint,

a sense of shame, or other disagreeable emotion of the mind." Judge White, in his note, section 969, Penal Code, says: "In assault and battery, the necessary acts, viz.: the 'Use of violence upon the person of another,' is easily understood. But, the necessary 'intent to injure him,' is not so easily explained by an affirmative description. Still, the necessary act being proved, the necessary intent to injure is known to exist as a legal necessity, whether we can discover, understand or explain it or not; so that the two concurring will constitute the legal injury of assault and battery, unless it be shown that the act was accidental, or the intention was innocent. It may, therefore, be said, that practically, in legal contemplation, the proof of the necessary act either is or carries with it the proof of the necessary intention to injure, so as to constitute the legal injury, unless it is rebutted by evidence showing that the legal presumption should not be indulged, which may not be by showing an absence of intention to injure, but, by showing that the intention was innocent with which the act was done. McKay v. State, 44 Texas, 43." The least touching of another's person wilfully is a battery. Norton v. State, 14 Texas, 387; Johnson v. State, 17 Texas, 516. From the State's evidence there can be no doubt that the jury were authorized to believe that appellant went into this house where this girl was, without her consent, to commit and did commit an assault and battery upon her. They were so authorized to find from appellant's own evidence together with all the other facts and circumstances. That he did intend to commit an assault and battery upon her is unquestionable—that it was with her consent, or without it and with intent to injure her was correctly submitted by the court and found against appellant by the jury.

Again, article 1011, Penal Code, says: "An assault and battery may be committed by the use of any part of the body of the person committing the offense, as of the hand, foot, head, or by the use of any inanimate object, as a stick, knife, or anything else capable of inflicting the slightest injury, or by the use of any animate object, as by throwing one person against another, or driving a horse or other animal against the person." Then article 1022, Penal Code, prescribes: "An assault or battery becomes aggravated when committed under any of the following circumstances: Subdivision 3. When the person committing the offense goes into the house of a private family and is there guilty of an assault and battery."

An assault and battery ipso facto is an aggravated assault when the house of a private family is entered and committed therein. State v. Cass, 41 Texas, 552. As stated above, in our opinion, the evidence justified the jury to find the appellant guilty of an aggravated assault and battery.

The above disposes also of appellant's complaint that the court erred in submitting to the jury at all, the offense of aggravated assault.

Appellant has two bills of exceptions complaining of certain remarks of the State's attorney in argument before the jury, quoting a very

brief statement of what the attorney said, which is complained of. The bills and neither of them show the status of the case, the occasion for the argument, nor anything else connected with it, except merely and simply that he complained of certain language in argument by the State's attorney to the jury. We have frequently recently passed upon these questions and announced the law as we find it settled for many years, that in a misdemeanor case and, even in felony cases, it is necessary for the bills to show the circumstances under which such remarks are made. This character of bills are just like any other and they must conform to the rules many years ago laid down by this court and adhered to before we can consider such questions. Section 857, p. 557, and section 1123, p. 732 of White's Code Criminal Procedure, where some of the cases and rules are cited. Besides, appellant is not shown to have requested any written charge to the jury to disregard such remarks and the court did not refuse any such charge. Clayton v. State, 67 Texas Crim. Rep., 311, 149 S. W., 119. It is unnecessary to cite the many other cases to the same effect. As to the State's comment upon the absence of appellant's witness, his cousin Monroe Ward, there was no reversible error, even if a charge had been asked because of the State's attorney so commenting. Sweeney **v.** State, 65 Texas Crim. Rep., 593, and cases therein cited.

The rule is so well and so long established in this State and uniformly adhered to, that where a special charge is requested and the court refuses it and the appellant merely excepts thereto, taking a bill and quoting such charge, without giving any reason therein showing why it should have been given, or was called for, and in the motion for new trial merely complaining that the court erred in refusing to give such special charge, giving the number thereof and nothing more, that this court will not consider such assignment, and we deem it unnecessary to again discuss the question. See Bird v. State, this day decided, and the cases therein cited; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W., 878; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W., 884; Perkins v. State, 65 Texas Crim. Rep., 311, 144 S. W., 241; Giles v. State, 66 Texas Crim. Rep., 638, 148 S. W. Rep., 317, where many of the cases are collated. This disposes of several complaints of appellant which are only so stated, as shown by the record.

It is also so well established and so long, in this State, by the uniform decisions that in a misdemeanor case the only way the charge of the court can be successfully attacked or assailed is by specially excepting to any omissions therein at the time the charge is given and then requesting in writing written charges covering the point and specially excepting to the refusal to give such charges as refused, assigning the proper reasons why the court's charge shows an omission and why the special charge requested should be given covering the point, that we deem it unnecessary to take up appellant's complaint

Vol. LXVIII Crim.—**11.**

in this way to some features of the court's charge. Giles v. State, 66 Texas Crim. Rep., 638, 148 S. W., 317; Perkins v. State, supra; Mealer v. State, 66 Texas Crim. Rep., 140, 145 S. W. Rep., 353.

The only other question raised and necessary to be decided is appellant's contention that the indictment herein did not authorize the court to submit to the jury in its main charge the question of aggravated assault and battery, on the statute so providing above quoted, because there was no allegation in either of the counts in the indictment, charging that an assault and battery was committed in a private residence. Both the statute and the uniform decisions of this court thereunder, are expressly against appellant and need no discussion. Article 771, Code Criminal Procedure, is: "Where a prosecution is for an offense consisting of different degrees the jury may find the defendant not guilty of the higher degree (naming it), but guilty of any degree inferior to that charged in the indictment or information." And the next article is: "The following offenses include different degrees: Subdivision 2. An assault with intent to commit any felony, which includes all assaults of an inferior degree." And article 837, Code Criminal Procedure, prescribing on what grounds a new trial may be granted and for no other. Subdivision 9 says: "Where the verdict is contrary to law and evidence. A verdict is not contrary to the law and evidence, within the meaning of this provision, where the defendant is found guilty of an offense of inferior grade to, but of the same nature as, the offense proved." See Lacoume v. State, 65 Texas Crim. Rep., 146, 143 S. W. Rep., 626 and cases therein cited.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied December 18, 1912.—Reporter.]