## B. F. ROBEY v. THE STATE.

No. 2262.   Decided April 30, 1913.

Rehearing granted February 4, 1914.

**1.—Aggravated Assault.**

Where, upon trial of aggravated assault, the evidence sustained the conviction, there was no error on that ground.

**2.—Same—Charge of Court—Misdemeanor.**

The law in misdemeanor cases is that when defendant requests special charges which are not the law of the case the court is not required to give them, or give any other charge on the subject. Following Perkins v. State, 65 Texas Crim. Rep., 311, and other cases.

**3.—Same—Intent to Injure—Charge of Court.**

Where, upon trial of aggravated assault, the court's charge could not have been otherwise understood by the jury than that they must believe that defendant intended to injure the prosecuting witness by committing the assault and battery upon him, the same was sufficient. Where the necessary act was proved the necessary intent to injure is known to exist as a legal necessity, unless the innocent intent is shown.

**4.—Same—Serious Bodily Injury.**

Where, upon trial of aggravated assault, the evidence showed that serious bodily injury was inflicted, and the court properly charged thereon, there was no error on this ground.

**5.—Same—Evidence—Acts of Third Parties.**

Upon trial of aggravated assault, there was no error in refusing to admit testimony that the other party who, with the defendant, committed the assault, had no intent to injure the prosecutor.

**6.—Same—Evidence—Letter—Carbon Copy.**

Upon trial of aggravated assault, where the State's evidence showed without objection that the prosecuting witness had sent his resignation to the Postmaster General, there was no error in permitting the State to introduce a carbon copy thereof.

**7.—Same—Defensive Theory—Charge of Court—Ejection.**

Where, upon trial of aggravated assault, the prosecutor claimed that while he was the legal employe in a postoffice, he was forcibly ejected therefrom and was denied his right to go into or through the private part of said postoffice without the consent of the defendant, who was the postmaster in charge, and the defendant introduced testimony that the Postmaster General had wired him authority to discharge said prosecutor as an employe, and that at the time of the alleged assault, he had no authority or right to go into or through the postoffice from which the public was excluded, the failure of the court to submit this defensive theory is reversible error.

Appeal from the County Court of Coleman.   Tried below before the Hon. T. J. White.

Appeal from a conviction of aggravated assault; penalty, a fine of $25. The opinion states the case.

*Snodgrass & Dibrell,* for appellant.—On question of intent to injure: Souther v. State, 18 Texas Crim. App., 352; Ware v. State, 24 id., 521; Trimble v. State, 57 Texas Crim. Rep., 439, 125 S. W. Rep., 40; Brown

v. State, 60 S. W. Rep., 548; Hinton v. State, 24 Texas, 454; Atkinson v. State, 62 Texas Crim. Rep., 419, 138 S. W. Rep., 125; Owens v. State, 62 Texas Crim. Rep., 129, 136 S. W. Rep., 1057; Calliham v. State, 67 Texas Crim. Rep., 658, 150 S. W. Rep., 617; Smith v. State, 57 Texas Crim. Rep., 585, 124 S. W. Rep., 679.

·*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Presiding Judge.—By proper complaint and information appellant was charged with an aggravated assault upon Tilden Brown, thereby inflicting serious bodily injury upon him. He was found guilty and his penalty fixed at a fine of $25,—the lowest prescribed for that offense.

The evidence shows that for about four years continuously before March 2, 1912, the date on which the offense is charged, said Brown had been the mailing and distributing clerk in the postoffice at Coleman, and had a key to the postoffice and access thereto at any and all times; that appellant was the postmaster. According to appellant's own testimony his feelings toward Brown at that time were unkind. It seems that because of this, Brown wrote to the proper postoffice authorities at Washington, D. C., on February 27, 1912, tendering his resignation to take effect on April 1, following. On February 29, 1912, Brown was sick and could not and did not work that day nor the next. Brown recovered sufficiently to return to his work, which he did, on the evening of March 2. As such employe at the time, Brown had the key to the postoffice and access thereto. Appellant was not in the office when Brown returned to work on the evening of March 2nd but came in the office while Brown was at work. Brown told him, that he didn't understand his message of February 29th to the effect that his resignation had been accepted, stating that his resignation had been tendered to take effect on April 1. Appellant invited him into his office in the postoffice where they proceeded to talk the matter over. Appellant claimed that he had wired the department at Washington and that the department had answered by wiring that Brown's resignation had been accepted. Brown asked him to show him the telegram. Appellant refused. Appellant tendered Brown a warrant for his pay for the month of February, stating in the face of it that it was in full for his services and that he had resigned. Brown refused to accept it and, it seems, then indicated he would then quit if appellant would pay him for the two extra days. Appellant refused to do this as postmaster, but offered to do it out of his own pocket. Brown declined to accept it and accept the said warrant because it stated that he had resigned on February 29, 1912. In effect appellant then ordered Brown out of the postoffice and ordered him out a certain door. Brown declined to go out at that door but offered and started to go out at that door that he usually came in and out. After getting several steps in that direction appellant intercepted him, caught hold of him and by force attempted to force him out of the door that he, appellant,

demanded he should go out. Brown resisted this,. still offering and claiming the privilege of going out the door he ordinarily came in and went out. Brown did not assault appellant in any way,—simply resisted appellant's attempt to force him out the door that appellant demanded he should go out. Appellant was a large man. Seeing, however, that he could not succeed in forcibly putting Brown out the door that he, appellant, wanted to force him out, he called upon the other employe in the postoffice at the time to come to his assistance and handle him roughly. The other employe then proceeded, under appellant's direction, to force Brown, and they both attempted to put him out the door they wanted him to go out. In the attempt by appellant to forcibly put him out he threw Brown against the side of the door and dislocated Brown's shoulder. The struggle continued. The other employe was a much larger, taller and heavier man also than Brown. They finally, after assaulting him and committing batteries upon him, as stated, succeeded in throwing him down, the said large employe weighing nearly 200 pounds on top of him and forcing him out of the door they wanted him to go out, Brown all the time claiming, and we think the evidence sufficiently shows that he claimed, to be still an employe in the department with a right to go in and go out of the office as he had been in the habit of doing. Brown testified pointedly that in appellant's attempt to force him out and throwing him against the door facing, he dislocated his shoulder. That the shoulder was dislocated was proven without question and without doubt. The testimony authorized the jury to belive and find, as they did, that the injury to Brown was a serious one in contemplation of our assault and battery statute. We think the evidence is amply sufficient to show, and authorized the jury to find, that Brown was not a trespasser in attempting to go through the postoffice and out of it where he had been in the custom of going in and out. The proof further showed that in order to put Brown's shoulder joint in place he had to be put under an anæsthetic and it took two physicians to replace his shoulder. He suffered therefrom considerably and for some length of time.

The court by his charge required the jury to believe that the assault and battery inflicted was a serious bodily injury before they could convict appellant of an aggravated assault. Appellant requested several special charges to the effect that if the Postmaster General had relieved Brown from service as an employe and appellant had employed a substitute in his place that Brown no longer had a right to go through or into the postoffice without appellant's consent, and appellant had the right to prevent him from doing so and to use sufficient force for that purpose, and by force to put him out of the postoffice, and if they so believed to acquit appellant. The court correctly refused these charges. They each and all ignored the fact that Brown was an employe therein, or had been, and still claimed that he was such employe and that he claimed the right to go in and out of the postoffice as he had usually done.

The law in misdemeanor cases is that when appellant requests special charges which are not the law of the case the court is not required to give them, nor is he under any obligations to give any other charge on the subject. In other words, that appellant must ask a correct charge applicable to the facts; otherwise, the court is under no obligations to give it nor to give any charge on the subject in a misdemeanor case. See Perkins v. State, 65 Texas Crim. Rep., 311, 144 S. W. Rep., 241; Mealer v. State, 66 Texas Crim. Rep., 140, 145 S. W. Rep., 353, and the authorities cited in said cases. This court has many times recently so held in numerous cases, as well as in many of the older decisions. It is unnecessary to collate the authorities.

Again, appellant complains that the court erred in refusing to give his charge, and complaining of the court's charge, because the court did not charge that the jury must believe beyond a reasonable doubt that the appellant intended to injure Brown, and if they did not so find to acquit appellant. The court in his charge told the jury that the use of any unlawful violence upon the person of another with the intent to injure him whatever be the means or degree of violence used is an assault and battery and that an assault and battery becomes aggravated when a serious bodily injury is inflicted. Then told the jury that if they believed from the evidence beyond a reasonable doubt that appellant, either acting alone or together with Center, said other employe, made and committed an aggravated assault and battery upon Brown by striking, wounding, etc., him, as alleged in the complaint, and thereby inflicted serious bodily injury upon him that he would be guilty of an aggravated assault. We think this could not otherwise have been understood by the jury than that they must believe that appellant intended to injure him by committing the assault and battery upon him, even if that was necessary. The law on this subject is as stated by this court in Ward v. State, 68 Texas Crim. Rep., 154, 151 S. W. Rep., 1073: "Our statute (P. C., art. 1008) expressly enacts that 'the use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or degree of the violence used, is an assault and battery.' The next article (1009) is: 'When an injury is caused by violence to the person, the intent to injure is presumed. . . .' Judge White in his note (sec. 969, P. C.) says: 'In assault and battery, the necessary act, viz: the 'use of violence upon the person of another,' is easily understood. But the necessary 'intent to injure him' is not so easily explained by an affirmative description. Still, the necessary act being proved, the necessary intent to injure is known to exist as a legal necessity, whether we can discover, understand or explain it or not; so that the two concurring will constitute the legal injury of assault and battery, unless it be shown that the act was accidental or the intention was innocent. It may therefore be said that practically, in legal contemplation, the proof of the necessary act either is or carries with it the proof of the necessary proof of the necessary intention to injure, so as to constitute the legal injury, unless it is rebutted by evidence showing that the legal presumption

should not be indulged, which may not be by showing an absence of intention to injure, but by showing that the intention was innocent with which the act was done. McKay v. State, 44 Texas, 43.' The least touching of another's person wilfully is a battery. Norton v. State, 14 Texas, 387; Johnson v. State, 17 Texas, 516."

The acts of the appellant in this case, without doubt and without question, not only show that appellant did actually commit an assault and battery upon Brown, but the circumstances show that his intent was to injure and his acts did injure the assaulted party. There are cases which raise the question of an intent to injure, and in such cases it might be the duty of the court to so specifically require the jury to believe, but this case does not raise such question. The evidence in no way indicates that appellant's assault and battery was by accident, or innocent intent, or anything of the kind.

Appellant also contends and cites authority to indicate that by the assault and battery in this case no serious injury was inflicted upon Brown. On this subject the court charged the jury that by serious bodily injury is meant such an injury as gives rise to apprehension, an injury which is attended with danger. "You are therefore instructed if you have a reasonable doubt as to whether the injury, if any, was a serious bodily injury, you will acquit the defendant of aggravated assault and battery." Brown testified that from the said injury inflicted upon him his shoulder hurt him a great deal, and pained him and he carried it in a sling for several weeks and it had continued to hurt him ever since (the injury was inflicted March 2, 1912, and the case was tried and Brown testified about September 2, 1912) ; that at the time he had two doctors to see him; that they had to put him under the influence of opiates in order to pull his shoulder back in place, and they did so. One of the doctors testified that when he examined Brown on the evening of March 2, 1912, he found his shoulder was dislocated; that he had another doctor to assist him in putting Brown's shoulder back in place and that they gave him an anaesthetic to do so; that there was no fracture of the bone,—it was just a dislocation of the joint, the end of the bone having been thrown out of the socket; that in his opinion the injury might be considered serious in the sense that it would render it more likely to occur again; that it put the joint in a condition that it would be more easily dislocated again and that another dislocation could be brought about without much force; that if the arm was thrown upward or extended it would be easy by a sudden wrench to be thrown out of socket. In our opinion the injury, under the circumstances and charge of the court, should be considered a serious one in contemplation of our statute.

The court did not err in refusing to permit the witness, Center, who was the other party who committed an assault and battery upon Brown, in connection with appellant, to testify that he did not intend to injure Brown. The assault and battery is charged to have been committed by appellant, and by the charge of the court he restricted the jury to the

consideration of the injury by appellant himself. The court had per-
mitted appellant to testify that he had no intent to injure Brown.
Neither did the court commit reversible error in permitting the State
to introduce a carbon copy of the resignation of Brown, sent by him to
the Postmaster General on February 27, 1912. Brown himself had
testified, without objection, that he had so sent his resignation to the
Postmaster General on that date, resigning to take effect on April 1,
1912. The court, in qualifying appellant's bill on that subject, did
so by stating that the original letter was sent to Washington, D. C.,
which was beyond the jurisdiction of the court.

We have not thought it necessary to take up and discuss saparately
each of appellant's claimed errors. What we have said above, we think,
covers, in substance and in effect, the whole of them. We have con-
sidered them all. It is our opinion no reversible error is shown.

The judgment will, therefore, be affirmed.

*Affirmed.*

## ON REHEARING.

### February 4, 1914.

PRENDERGAST, Presiding Judge.—Appellant has filed a lengthy
motion for rehearing, and brief and argument thereon. He urges that
the court is in error in the opinion herein in many particulars. No
other point urged for rehearing, except one, in which there is any merit.

Upon a re-examination of the case we have concluded that the special
charges refused in this case present one question which was not pre-
sented by the court's charge but which should have been presented, and
results in a reversal of this case. The evidence develops that appellant
claimed that he had wired to the Postmaster General the fact of Tilden
Brown's resignation as an employe in the postoffice, and that he was so
rushed with business at the postoffice it was necessary to have another
in his stead and that under the circumstances the Postmaster General
had wired him the authority to relieve said Brown from said service
as an employe and that he had done so and employed another in his
place; and at the time of the alleged assault in this case said Brown was
not an employe in said postoffice and had no authority or right to go into
or through the same. Of course, that part of the postoffice building
from which the public is excluded is what is meant. The trial court
should therefore have submitted to the jury the appellant's theory to
the effect that if they believed from the evidence that appellant, under
the authority of the Postmaster General, had in fact relieved said Brown
from the government service as an employe and in his stead he had em-
ployed another, then said Brown no longer had the right to go into or
through the private part of said postoffice without the consent of ap-
pellant, and if he attempted to do so appellant had the right to prevent
him and to use sufficient force for that purpose. And if so acting,
himself, or his other employe acting with him, in a bona fide effort to
prevent said Brown from going into or through said postoffice, committed

an assault and battery upon him and in so doing used no more force than was necessary to prevent said Brown from going into or through said postoffice then to acquit him. The substantial reverse of the proposition should also be given,—that is, if appellant and his other employe used more force than was necessary, or his purpose and intention was not to prevent said Brown from going into or through said postoffice,. but using that as an excuse or pretext for committing an assault and battery upon Brown, then his assault and battery upon Brown would have been unjustifiable. We think the evidence justifies a charge on this feature of the case. It is to be noted that in the interview between appellant and Brown just before the assault appellant claimed to have had a telegram from the Postmaster General to do what he had done in relieving Brown and employing another. Brown called for this telegram at the time. Appellant did not produce it. On the trial appellant testified that he had such telegram but did not produce it. If he had such a telegram the court should have required its production and' introduction in evidence, instead of appellant's oral testimony to the: fact and its contents.

For the error above pointed out the rehearing is granted, the former judgment of affirmance herein is set aside and this cause is now reversed and remanded for a new trial.

*Reversed and remanded..*