## WILL BRUCE v. THE STATE.

### No. 1651. Decided June 14, 1899.

**1. Homicide—Self-Defense—"Serious Bodily Injury"—Charge.**

Penal Code, article 679, provides that a homicide is justifiable when committed against an attack which produces a reasonable expectation or fear of death or of some serious bodily injury. Held: "Serious bodily injury" does not mean an injury that might eventuate in death or probably cause death, and a charge of court giving those terms such a meaning is erroneous.

**2. Same—Hearsay—Evidence.**

What one party told another that a third party, who was a State's witness, had admitted to him, is clearly hearsay and inadmissible.

**3. Requested Instructions.**

It is not error to refuse a requested instruction, which, as far as it is applicable, has been given in the court's charge.

4. Same.

It is not error to refuse requested instructions where there is no evidence calling for such instruction.

5. Self-Defense—Charge of Court.

On a trial for murder, where the uncontroverted evidence showed that deceased was of greatly superior strength to defendant, and the charge of the court upon defendant's right of self-defense was objected to because it limited his right to the great superior strength and manhood of deceased; Held, it was not error to apply the law directly to the facts; and if the charge was erroneous it did not, under provisions of article 723, Code of Criminal Procedure, authorize a reversal of the judgment.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with the murder of T. S. Rone, on the 7th day of December, 1898, by shooting him with a pistol.

The essential facts shown by the record, briefly stated, are: That defendant, Bruce, was a young married man and T. S. Rone, deceased, had boarded with him and owed him a bill for five months board, which he failed and refused to pay; and Bruce sued him and recovered a judgment. Rone sued Bruce for damages for injury to his horse, but dismissed his suit. Bruce had execution issued on his judgment against Rone; but, failing to make his judgment debt, finally dismissed his cause. This was the origin of the trouble, and Rone was greatly incensed at and frequently threatened Bruce. On the evening before the homicide Rone went to Bruce's place to get some corn he had there in the crib, and a wordy, angry altercation ensued between them about the debt Rone owed him, Rone cursing and bantering him for a fight, which Bruce declined, and as Rone left he told Bruce he would see him again. On account of apprehended trouble, Bruce got a pistol, after the first difficulty, which he carried when he went from home. On the day of the homicide, Rone had armed himself with a pistol. Bruce was physically a weak man, and besides had been suffering with chills and fever. Rone was a large and much more powerful man. The killing occurred on a public road upon which the parties were traveling in opposite directions in wagons. When the wagons had met and were about passing each other Rone told Bruce to stop; jumped out of the wagon he was in, went to Bruce's wagon, and asked him if he was ready to settle that difficulty. Rone had his right hand in his right pants pocket. Bruce said, "Shoot me, you G—d d—d son of a bitch! You have a pistol and I haven't." Rone asked him if he would fight him a fair fight, and Bruce said he would. Rone then went back to his wagon, took his pistol out of his pocket, pulled off his coat and vest and laid them and his pistol in the wagon, and returned rapidly to Bruce's wagon. Bruce was sitting upon a load of corn with his legs hanging over the side of the wagon bed. In his testimony he says he jumped upon the top of the corn to get out of the way, when Rone caught him by the bottom of the pants and pulled him off the wagon. He says: "We at once

began fighting, and fought for some time by the side of the wagon; we struck several blows, then clinched and scuffled around, he trying to throw me down, and I catching to the side of the wagon bed and the wheels to keep from falling; finally he got me by the throat and began choking me until I was almost sinking down and was holding to the top of the hind wheel with my left hand to keep from falling; just then I looked toward J. J. Crow, who was standing at the head of my team, with an appealing look that ought to have convinced any man that I needed help; I could not speak or relieve myself, and took out my pistol and shot Rone; this was all I could do to save myself. Rone staggered back and Crow ran up and caught the pistol, saying, 'Hold up; you can't cut anything like that,' and wrenched the pistol from me; as he did so the pistol fired again and shot off the forefinger on the left hand. The pistol was a double-action pistol. As the pistol fired the second time my team started to run, and I called to Cal Norris, who was standing behind the wagon, to catch them. I then said to Crow, 'Now you have my pistol and I have killed the damn son of a bitch, and I am glad of it, and I have shot off my forefinger; but I was justified in it.' I then went to my wagon, about twenty or thirty yards distant, where Norris was holding the team, and said; 'Now, you see what you have done. I told you not to let him jump on me. I have killed the son of a bitch, and I am glad of it, but I was justified in it.' I told Norris that I had told Rone the evening before that I did' not want anything more to do with him. I came on to town and surrendered to the sheriff."

The court charged the jury among other instructions as follows, viz: "Serious bodily injury, as used in the foregoing instructions, means such injury to the person assaulted as might eventuate in death or might probably cause his death."

No briefs for appellant have come to the hands of the Reporter.

*Rob't A. John*, Assistant Attorney-General, for the State.—Appellant's first assignment of error is predicated upon the charge of the court defining bodily injury in the following terms: "Serious bodily injury as used in the foregoing instructions means such an injury to the person assaulted as might eventuate in his death, or might probably cause his death."

It is submitted by the State that the above definition of "serious bodily injury" is a correct definition. Serious bodily injury is an injury that gives rise to an apprehension and injury attended with danger as defined by Judge Hurt in George v. State, 21 Texas Criminal Appeals, 317. Apprehension of what? Danger of what? Death. Hence, the definition is correct. Hunnicut v. State, 25 Texas Crim. App., 644; George v. State, 21 Texas Crim. App., 317; Reins v. People, 30 Ill., 275; Lawlor v. People, 74 Ill., 230.

Under the appellant's second assignment, he complains that witness

Ralston should have been permitted to testify what his nephew, John Ralston, had told him that State witness Crow had said about the transaction.

This evidence was purely hearsay and not impeaching only as to witness Ralston, a defendant witness, without a proper predicate. The impeaching witness was the nephew, and what the nephew tells his uncle is certainly not testimony to impeach the witness Crow. Snell v. State, 29 Texas Crim. App., 236.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

Appellant complains of the court's charge in the following particular. to wit: We quote: "It was in evidence that appellant and deceased met in the public road, and deceased assaulted appellant, and was choking him to an extent that appellant could not speak, and was about to force him to the ground, when appellant, who was much the smaller man, pulled his pistol, and killed deceased. The court charged the language of article 679, Penal Code, to wit, that homicide is justifiable when committed against an attack which produces a reasonable expectation or fear of death or of some serious bodily injury, but the court then instructed the jury that 'serious bodily injury' meant such injury as might eventuate in death or might probably cause death. Appellant submits that this definition is radically wrong, and was greatly to his prejudice." In connection with this charge, we make a short excerpt from the testimony of appellant as follows: "Finally deceased got me by the throat, and began choking me until I was almost sinking down, and was holding to the top of the hind wheel with my left hand to keep from falling. Then I looked toward J. J. Crow, who was standing at the head of my team, with an appealing look that ought to have convinced any man that I needed help. I could not speak or relieve myself, and took out my pistol and shot Rone. This was all I could do to save myself."

Now, then, the question arises as to what are the rights of appellant on the question of self-defense. The statute says that he has a right to defend himself against reasonable expectation or fear of death or of some serious bodily injury. Does "serious bodily injury" mean necessarily contemplation of death, or any injury that will eventuate in death or might probably cause death? We do not think so. We think the word "serious" in said statute means what the word imports,—that is, grave; not trivial; not slight. Then "serious bodily injury" would be an injury that was not a trivial one; not a slight one. We know of no authority that says it means an injury that might eventuate in death or probably cause death. The record before us shows that appellant was being choked by deceased to such an extent as might indicate that he was being seriously injured, and to have his right of self-defense restricted in the manner as indicated in the court's charge we think was

error. To be choked until one falls from lack of breath, or from injury inflicted, might be a serious injury; and we think, as contended by appellant, that he had a right to complain of the charge, and say that it greatly prejudiced his right of self-defense. We think the court erred in his definition of "serious bodily injury." We do not wish to be understood as holding that it is necessary to define the term "serious bodily injury," for we think the words carry upon their face their meaning; but we hold that "serious bodily injury" does not mean an injury that must necessarily or probably be fatal. We think the court's charge was erroneous.

Appellant complains that the court erred in refusing to permit John Ralston, Sr., to testify that J. G. Ralston had, in Waxahachie, on the day of the killing told him that the State's witness J. J. Crow had admitted to him that deceased, T. S. Rone, had pulled appellant off his wagon and assaulted him. We do not think there was any error in the court's refusal to permit the witness to so testify. It is clearly hearsay, and inadmisible. Snell v. State, 29 Texas Crim. App., 236.

Appellant excepted to the refusal of the court to give the following special charge: "A 'mutual conflict,' as meant in the main charge, is when two parties voluntarily and willingly engage in a combat. If a contest is forced on a party, and, under all the circumstances, there is no volition on the part of the combatants, then the combat can not be called 'mutual.' If you believe that Tom Rone intended, and it was his purpose, to fight defendant, and that he forced a fight upon defendant, and defendant did not willingly engage in a mutual combat, then defendant would have the complete right of self-defense. If Tom Rone assaulted defendant, and defendant, by reason of the superior strength of Tom Rone (if any), apprehended the infliction of a serious bodily injury from deceased, then defendant would have a right to act upon such appearance of danger, and if, doing so, he shot and killed deceased, then he would be justifiable under the law, and in such case you will so find." This charge, as far as we think the same was applicable, was given by the court in his main charge.

Appellant also excepted to the refusal of the court to give his special charge to the effect that, even if the jury believed that appellant and Rone mutually agreed to fight a fist fight, and that during the prosecution of said fight Norris and Crow approached them in such manner as made it reasonably to appear to defendant that one or the other was about to aid Rone in his assault upon defendant, and that defendant upon such apprehension fired and killed Rone, then his right of self-defense would not be abridged. We have searched the record in vain for any testimony authorizing such a charge and must say that the record does not disclose any such evidence. There was no error in the court refusing to give this charge.

Appellant contends that the court erred in its charge in effect limiting appellant's right of self-defense to greatly superior physical strength and manhood of deceased, T. S. Rone; for if appellant was un-

lawfully attacked, and was about to suffer serious bodily injury, his right of self-defense was complete, regardless of the superior strength of Rone. The evidence shows that deceased was a man of greatly superior strength to appellant. There is no controversy whatever on this question, and, in view of this fact, we do not think there was any error in the court applying the law to the facts of the case as he did in this instance. At any rate, we can not see that it was such error, if error, as would authorize a reversal of this case, under article 723 of the Code of Criminal Procedure.

In the view we take of this case, it is not necessary to discuss the sixth assignment of error, in reference to the misconduct of the jury, as it will not likely occur on another trial. For the error in the charge above discussed the judgment is reversed, and the cause remanded.

*Reversed and remanded.*