### WILL JACKSON v. THE STATE.

#### No. 8846.    Delivered May 6, 1925.

1.—Aggravated Assault—Self Defense—Limiting Right of—Error.

Where on a trial for aggravated assault, the charge of the court on self defense coupled with the issue the State's theory that defendant provoked the difficulty by insulting words or language toward prosecutor, and failed to

submit appellant's theory that no such language was used by him, and also refused appellant's special charge presenting this theory, the court committed error. This special charge should have been given. Following Kinslow v. State, 66 Tex. C. R. 430, and other cases cited. See Art. 1014, Sub. 6, P. C.

2.—Same—"Serious Bodily Injury"—Should be Defined—In Court's Charge.

Where on a trial for an aggravated assault, the court charged the jury, that if the knife used by appellant was a deadly weapon, or if "serious bodily injury" was inflicted that a conviction would be authorized, but failed to define "serious bodily injury," appellant's special charge covering this omission should have been given. Where serious bodily injury is relied upon, the general rule is that the term should be defined in the charge. Following De Los Santos v. State, 31 S. W. 395. Distinguishing Thomas v. State, 55 Tex. C. R. 293 and Porter v. State, 60 Tex. C. R. 590.

Appeal from the Corporation Court of the City of Texarkana, Bowie County. Tried below before the Hon. E. Harold Beck, Judge and Recorder.

Appeal from a conviction for an aggravated assault; penalty, twelve months in jail.

The opinion states the case.

*Elmer L. Lincoln,* of Texarkana, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Appellant is under conviction for an aggravated assault upon Jesse Radcliffe. Punishment is twelve months in jail.

Appellant is a negro, Radcliffe a white man. A carnival was in progress in the city of Texarkana. While defendant and a woman companion were walking along a street at the carnival they met Radcliffe and his brother. In passing the parties brushed against one another. Radcliffe and his brother testify that Jesse said to defendant, "Are you going to run over us?", to which defendant replied, "I will, G— d— you, if you don't get out of the way", and that without further remarks drew a knife and began cutting Jesse; that defendant then ran and was pursued by Jesse; that defendant got a stick and knocked Jesse down. Jesse denied being drunk but admitted he had been drinking intoxicating liquor. Defendant and his companion gave an entirely different version of the transaction. They testify that when Jesse asked defendant if he was trying to run over them, defendant disclaimed any such intention, saying, "No sir, excuse me, please." That one of the Radcliffes cursed defendant and both of them attacked him, one striking him in the face with his fist; that he kept them off as best he could until he could get his knife out, when he cut Jesse; that defendant then ran and was pursued by Jesse who had a

stick in his hand; that defendant secured a stick and threw it at Jesse. Disinterested witnesses did not see the beginning of the trouble, but all agree that when their attention was attracted defendant was running and was being pursued by Jesse. Defendant proved a splendid reputation by his employer and other witnesses.

The only charge given upon the issue of self-defense was the following:

"You are further instructed that no verbal provocation justifies an assault and battery; and if the defendant used insulting or abusive words or language to Jesse Radcliffe or to Albert Radcliffe, this would not justify the said Jesse Radcliffe or the said Albert Radcliffe in making an assault upon the defendant, and such assaults, if made, would be unlawful, and the defendant would have the right to defend against such assaults, if any, and his right of self-defense would be complete."

It will be noticed that this instruction only justifies defendant in repelling an attack by the Radcliffes which had been provoked by insulting or abusive words used by defendant towards them. Defendant and his companion deny any use by him of words which were the least abusive, or which could be at all construed as insulting. Defendant had a right to defend against any unlawful assault made upon him by either or both of the Radcliffes. · The charge was excepted to as not presenting the issue of self-defense raised by the testimony, and in direct connection with such exception the court was requested to give a special charge upon the subject which, in substance, told the jury that if Jesse Radcliffe or Albert Radcliffe, either or both, had made an unlawful assault upon defendant, and that he cut Jesse while defending himself against such attack, he should be acquitted. This charge should have been given, Art. 1014, Sub. 6, P. C.; Kinslow v. State, 66 Texas Crim. Rep. 430, 147 S. W. Rep. 249; Parish v. State, 153 S. W. Rep. 327; Waller v. State, 90 Texas Crim. Rep. 257, 234 S. W. Rep. 534.

The court authorized conviction of aggravated assault if the knife used by defendant was a deadly weapon, or if serious bodily injury was inflicted. A "deadly weapon" was defined in the charge, but there was no definition of the term "serious bodily injury". A special charge defining it was requested and refused. In De Los Santos v. State, 31 S. W. Rep. 395, Judge Hurt says in some cases such a charge would be necessary, but held its omission in that case not hurtful as the seriousness of the injury was not questioned.

In Thomas v. State, 55 Texas Crim. Rep. 293, 116 S. W. Rep. 601, Judge Ramsey expresses the opinion that the court should not in any case define what is meant by "serious bodily injury" as they are words of ordinary significance as well understood by a jury as would be any language employed to define them. It is evident from the opinion in Porter v. State, 60 Texas Crim. Rep.

590, 132 S. W. Rep. 935, that the eminent jurist who wrote in Thomas' case had changed his views as therein expressed, for the Porter case was reversed by him on account of the failure of the court to define what was meant by "serious bodily injury". No reference was made in Porter's case to the conflicting announcement in the Thomas case. We are led to believe the divergent views announced in the two cases came about by reason of the facts being different, and reconciling the conflict as best we may, think the statement in the earlier case of De Los Santos (supra) to be correct, that is, that in some cases such definition is required, especially where the character of the injury is made an issue upon the trial. If this should become an issue upon another trial of the present case it would not be inappropriate to define what is meant by a serious bodily injury.

The point is made that the evidence in the record fails to show, either that the knife used by defendant was a deadly weapon, or that the wounds inflicted were of a serious character. These matters may be more clearly developed by the testimony of the physician upon another trial. We do not discuss the questions as a reversal is demanded by the errors already referred to.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*