Coke HAYS, Appellant,

v.

The STATE of Texas, Appellee.

No. 44852.

Court of Criminal Appeals of Texas.

May 9, 1972.

Rehearing Denied June 21, 1972.

G. C. Harris, Greenville, for appellant.

Jack Q. Neal, Dist. Atty., L. M. Braziel, County Atty., Sulpher Springs, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

Appellant was indicted for assault with intent to murder with malice aforethought. He was convicted of the lesser included offense of aggravated assault. The jury assessed his punishment at confinement in the county jail for two years and at a fine of $1,000.00.

The court's charge authorized the jury to convict for aggravated assault if they found that the assault had been committed with a deadly weapon, under circumstances not amounting to an attempt to murder or maim, or if serious bodily injury was inflicted on the person assaulted.

Appellant challenges the sufficiency of the evidence to sustain the conviction, particularly contending that the evidence fails to reflect that the assault was committed either with a deadly weapon, or that the complaining witness suffered serious bodily injury.

In Garrett v. State, 164 Tex.Cr.R. 275, 298 S.W.2d 945 (1957), it was held that under an indictment charging an assault with intent to murder, a conviction for aggravated assault was not authorized where the instrument used was not a deadly weapon and the injuries inflicted were not serious.

Jesse Jones, the 55-year old complaining witness, was in the wholesale meat business and made deliveries to the appellant's grocery store in Emory at least twice a week. He suffered from a heart condition for which he took nitroglycerin tablets.

On January 9, 1970, Jones arrived at appellant's store between 6 and 7 p. m., which was the time of day that he normally arrived, to make his deliveries there. After checking the store's merchandise to see what might be needed, he took certain items out of his truck and placed them on a dolly. At this time, appellant, with a rifle in his hand, approached Jones and told Jones that if his (appellant's) business

wasn't appreciated anymore than to make him the last delivery of the day, Jones should get off the premises before he (the appellant) blew his head off. The rifle was then pointed at Jones.

After some words were exchanged, Jones threw the merchandise back into the truck and shut the door. At this time, the appellant laid the rifle down and walked over to Jones and said, "You yellow bellied so and so, if you had any guts at all you would not stand there and take the things I'm calling you. You sorry so and so." Jones then struck the appellant, who retrieved his rifle and struck Jones over the head with it, breaking the rifle stock. The blow "bursted" Jones' head "plumb to my skull," knocking him to the ground where the appellant kept striking him, this time with the steel barrel of the rifle. When Jones got to his feet, the appellant "cut" at him with a pocket knife, but missed. And when appellant's wife came out of the store, Jones was able to get his truck started and drive off, stopping the first person he saw, who took him to the Sheriff's office. Jones' wife came to Emory and took him to Greenville where, in the hospital emergency room, a doctor "sewed his head up." Thereafter he went home that night; was "off work" for three weeks and, subsequently, took a lighter job.

Edna Jones testified she took her husband to the Greenville hospital; that when she first saw him there was "blood all over his clothes" and a large cut on his forehead "large enough that you could see into it."

Sheriff Robinson testified that when he saw Jones he was covered with blood and his "head was split open in a couple of places."

No doctor was called by the State.

The 47-year old appellant testified he had been target practicing with his .222 carbine and returned to his store and observed Jones unloading merchandise and complained to him about the lateness of his

deliveries; that he lost his temper and started arguing; that Jones threw the merchandise into the truck and swung around and hit him in the jaw, cutting the inside of his mouth; that he struck Jones with the rifle, breaking the stock and did not, thereafter, use the rifle. He denied he struck Jones with the rifle barrel or that he tried to cut Jones with a pocket knife, and testified he acted in self-defense. He acknowledged he saw some blood running down Jones' face before Jones left. He also admitted he was a younger, heavier and larger man than the complaining witness.

The general verdict returned by the jury is sufficient, if the evidence shows that the assault was committed with a deadly weapon, or if serious bodily injury was inflicted.

"If the only proof that the weapon used in the assault was a deadly weapon is that it was a pistol used as a bludgeon, the proof is insufficient to show that it was a deadly weapon. When an instrument or weapon is used to strike with, the size, weight, and effect should be shown in order that there may be some evidence from which to determine whether or not, as used, it was a deadly weapon." 4 Branch's Ann.P.C.2d ed. § 1753, p. 131.

"The wounds inflicted upon the person assaulted will be looked to in determining whether or not the pistol, knife, or other weapon used was a deadly weapon, and proof that the wounds thereby inflicted were of a serious nature and of the size and weight of the weapon, or either, and of the manner of its use may be sufficient to show that the weapon as used was a deadly weapon." 4 Branch's Ann.P.C.2d ed. § 1753, p. 132.

■ In the instant case, the evidence reflects that after pointing the rifle at Jones, the appellant used the rifle as a bludgeon and broke the rifle stock with a blow to Jones' head which knocked him to the ground, inflicting a wound "plumb to the skull"; and, then, began to beat him with the 22-inch long metal barrel of the .222 rifle. The 55-year old heart patient was covered with blood; the head wound required stitching by a doctor, and he was unable to work for three weeks and was forced to accept "a lighter job."

The court, in its charge, defined a deadly weapon as "one which, according to the manner and mode of its use, is reasonably calculated or likely to produce death or serious bodily injury."

"To constitute 'serious bodily injury,' the injury must be grave, not trivial—such an injury as gives rise to apprehension of danger to life, health, or limb." 4 Branch's Ann.P.C.2d ed. § 1749, p. 127. While the decided cases do not appear to have always been consistent as to certain facts, id., it has been held that where the scalp was cut an inch or two long and to the bone by a blow from the butt end of a billiard cue, weighing about a pound, "a serious bodily injury" was inflicted. Housley v. State, 55 Tex.Cr.R. 372, 116 S.W. 816 (1909); Faulkner v. State, 138 Tex.Cr.R. 632, 137 S.W.2d 1039 (1970). Robey v. State, 73 Tex.Cr.R. 9, 163 S.W. 713 (1914), held that proof of a dislocation of a shoulder may justify a finding of serious bodily injury. And, in Hatfield v. State, 377 S.W.2d 647 (Tex.Cr. App.1964), evidence that the injured party received a cut lip, lost some teeth, was hospitalized for about a week and was unable to work sustained a finding that serious bodily injury had been inflicted.

Considering the evidence in the light most favorable to the jury's verdict, we conclude the evidence is sufficient to sustain the conviction of aggravated assault with a deadly weapon or aggravated assault inflicting serious bodily injury. See Stevens v. State, 27 Tex.App. 461, 11 S.W. 459 (1889).

■ Appellant also complains of the court's failure to define "serious bodily injury" in its charge despite his timely presented objection.

In 4 Branch's Ann.P.C.2d ed. § 1750, p. 129, it is writtten:

"The term 'serious bodily injury,' not being specially defined by statute, is used in its ordinary meaning, and it is not error to fail or refuse to define that term in the charge of the court. De Los Santos v State, 31 SW 395; Bruce v State, 41 Crim [27] 31, 51 SW 954; Thomas v State, 55 Crim [293] 295, 116 SW [600] 601. See also Price v. State, 87 Crim 163, 220 SW 89. For a case to the contrary see Porter v State, 60 Crim [588] 590, 132 SW 935. The rule seems to be that, if the character of the injury is made an issue, then the term 'serious bodily injury' should be defined; otherwise it is not necessary to do so. Jackson v State, 100 Crim 572, 272 SW 179; Smith v State, 139 Crim 355, 140 SW2d 452."

Undoubtedly, any question would have been removed had the court so charged as was done in Hatfield v. State, supra, but we perceive no error. While no medical evidence was offered, there was other evidence reflecting there was serious bodily injury, and there is no showing that the appellant was prejudiced or deprived of a fair trial by the court's failure to so charge. See Article 36.19, Vernon's Ann. C.C.P. Further, we note the conviction is sustainable as an aggravated assault with a deadly weapon.

■ In two grounds of error, the appellant complains of the court's action in instructing the jury to disregard the testimony of his wife that she heard him say Jones started the difficulty and had hit him first. Appellant's wife testified that during the altercation and before Jones left the premises, she came out of the store and that her husband stated, "He started it. He hit me first." Upon the State's objection that the same was hearsay, the court sustained the objection and instructed the jury to disregard the testimony. The spontaneous declarations made during the course of the alleged offense were clearly admissible as part of the res gestae, and further admissible since the State had earlier gone into part of the same conversation the appellant had with his wife at the same time. See Article 38.24, Vernon's Ann.C.C.P.

Does this error of the court call for reversal? We think not. In 5 Tex.Jur.2d Appeal and Error—Criminal Cases § 448, p. 715, it is written:

"The erroneous exclusion of evidence offered by the defendant will require reversal if the exclusion prejudiced him, but not otherwise. And reversal is not required by exclusion of evidence of a fact proved by other evidence."

Both Jones and the appellant testified that Jones struck the first blow and the physical struggle then began. While the court should not have excluded testimony proffered, we cannot conclude that reversible error is presented since the substance of the exclusion was proved by other evidence and, in fact, was undisputed.

■ Appellant also complains that he was not permitted to testify that when Jones began throwing his merchandise back into the truck that he appeared angry. On direct examination, he was asked: "Did he (Jones) appear to be angry?" The State's objection that the question called for a conclusion was sustained. Appellant contends the question was proper since it called simply for a short-hand rendition of the facts, citing Doyle v. State, 65 Tex.Cr. R. 300, 143 S.W. 630 (1912). We agree, but the appellant did not perfect his informal bill of exception by showing what the witness would have testified to if he had been permitted. Appellant's counsel did except to the court's ruling and stated in the jury's presence that if appellant had been permitted to answer, he would have answered in the affirmative. It is true that Article 40.09, § 6(d) (1), Vernon's Ann. C.C.P., permits a proffer of proof in lieu of the perfection of a bill of exception, but the same must be made with the ap-

proval of the trial judge outside the jury's presence.

Further, we note that appellant was not prohibited from testifying as to Jones' acts, conduct, words, physical appearance, etc. In light of his testimony and that of Jones concerning the surrounding circumstances and what has been said above, no reversible error is presented.

Appellant concedes that his grounds of error relating to jury argument were not properly preserved for review.

Finding no reversible error, the judgment is affirmed.