In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00147-CR
_____

**TERRENCE DESIRE HOLMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 15-22688**

**MEMORANDUM OPINION**

In two issues, Terrence Desire Holman[1] appeals his conviction for aggravated robbery. *See* Tex. Penal Code Ann. § 29.03(a) (West 2011). In his first issue, Holman contends that the evidence is insufficient to prove that the complainant suffered from a "serious bodily injury," an element that the State was required to prove to establish that Holman was guilty of committing the aggravated robbery based on the indictment the grand jury returned in this case. *See id.* §

_____

[1] The trial court's final judgment indicates that Terrence Desire Holman is also known as James D. Fontenot.

1

22.02(a)(1) (West 2011). In his second issue, Holman argues that the trial court erred by admitting the complainant's medical records without redacting two allegedly inadmissible hearsay statements that were included in them. Because sufficient evidence was before the jury to support the jury's conclusion that Holman caused the complainant to suffer a "serious bodily injury," we affirm Holman's conviction. Furthermore, we conclude the trial court did not abuse its discretion by admitting the complainant's medical records without redacting the parts that Holman contends were inadmissible as hearsay. We affirm the trial court's judgment.

## Background

W.H., Holman's father, was 78 when he claims that Holman robbed him. During the trial, W.H. testified that while he was in his bedroom one evening, Holman came into his bedroom, hit him from behind, and knocked him out. According to W.H., Holman took his wallet, the keys to his truck, and his truck. W.H. explained that Holman hit him in the back of the neck with a small bat, which caused him to fall and strike his head on a piece of furniture. W.H. testified that he was unconscious for "at least about 15 minutes." W.H. also suffered a cut above his left eye that bled considerably after he fell. During the trial, W.H. testified that he returned to work several days after he was injured because he had to make a living. In describing his injuries, W.H. explained that he thought the

2

injury he suffered during the robbery was serious, that he now suffers from neck pain that he did not have prior to the robbery, that he takes medicine for his pain, and that he has a permanent scar over his eye, but that he did not think the scar disfigured him.

The medical records that were admitted into evidence indicate that W.H. was treated in a local emergency room on the day of the robbery. A CT scan and x-rays were taken of W.H.'s head. W.H.'s medical records indicate that he suffered a "[c]ontusion of [h]ematoma on [l]aceration of [i]ntracranial bleed – [c]oncussion cerebral contusion." The discharge papers included in W.H.'s medical records reflect that he suffered a laceration above his left eye and a head injury as a result of an assault. The discharge instructions from the emergency room also state that W.H. suffered a "[b]lunt [t]rauma" and a "[c]oncussion and [b]rain [i]njury[.]" Pictures of the cut above W.H.'s eye before the cut was stitched were included in the exhibits admitted during Holman's trial.

Officer William Gilmore, a police officer employed by the City of Beaumont, testified during the trial. Officer Gilmore stated that he responded to a request for assistance due to an alleged assault at W.H.'s home. Officer Gilmore explained that when he arrived at W.H.'s house, he observed an elderly man sitting on his bed, and that the man was bleeding severely. According to Officer Gilmore, he thought the injuries he observed might be serious due to W.H.'s age and

3

condition at the time. Based on what he saw, Officer Gilmore stated that he considered W.H.'s injuries to be "pretty bad." According to Officer Gilmore, he felt W.H. had a serious injury.[2] Officer Gilmore also testified that based on his training and experience, and considering the small bat that Holman used in the assault, he thought that W.H. might have been killed.

Gregory Pratt, a City of Beaumont detective who investigated Holman's case, also testified during the trial. Detective Pratt expressed the opinion that W.H. received a potentially serious injury.[3] Additionally, Detective Pratt stated that given the wound W.H. suffered to his head, his age, and the fact that he lost consciousness, he thought that W.H. had a "serious bodily injury." Detective Pratt indicated that his opinion about the seriousness of W.H.'s injury was based on his training and experience. Finally, Detective Pratt explained that injuries like the one W.H. received are dangerous and are considered critical.

Standard of Review

In his first issue, Holman argues that the evidence is insufficient to support the jury's conclusion that W.H. suffered a "serious bodily injury" as that term is defined by the Penal Code. *See* Tex. Penal Code Ann. § 1.07(a)(46) (West Supp.

---

[2] Officer Gilmore did not define precisely why he classified W.H.'s injury as serious, but he did state that he treated all injuries as serious.

[3] On cross-examination, Detective Pratt defined the term "serious bodily injury" as anything that possibly puts your life in jeopardy or something that might disfigure you or cause permanent damage.

4

2016).When reviewing whether evidence in a criminal case is sufficient to support a defendant's conviction, we review all of the evidence in the light most favorable to the verdict, and then determine whether, based on the evidence and reasonable inferences form the evidence, rational jurors could have found that the defendant committed the essential elements of the crime under a standard of beyond reasonable doubt. *See Roberts v. State*, 273 S.W.3d 322, 326-27 (Tex. Crim. App. 2008) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). By reviewing the evidence in the light most favorable to the verdict, the appeals court gives the jury proper deference, allowing the jury to fulfill its responsibility to fairly resolve any conflicts in the testimony, to weigh the evidence favorable and unfavorable to a finding of guilt, and to draw reasonable inferences from the evidence the court admits in a trial. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In reviewing a complaint asserting the evidence is insufficient to support a conviction, it is not our role to substitute our judgment for the factfinder's when the factfinder's conclusions are reasonable deductions from the evidence that is before it in a trial. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

Sufficiency Issue

As defined by the Texas Penal Code, the term "[s]erious bodily injury" means an injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46). "[T]here are no wounds that constitute 'serious bodily injury' per se." *Jackson v. State*, 399 S.W.3d 285, 292 (Tex. App.—Waco 2013, no pet.) (citing *Hernandez v. State*, 946 S.W.2d 108, 111 (Tex. App.—El Paso 1997, no pet.)). Instead, whether a victim's injuries resulted in a "serious bodily injury" is determined on a case-by-case basis, and the evidence is to be evaluated in each case to determine whether the evidence allowed the jury to reasonably conclude that the victim suffered a "serious bodily injury" due to the defendant's conduct. *See Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987), *overruled on other grounds by Blea v. State*, 483 S.W.3d 29, 34 (Tex. Crim. App. 2016).

When evaluating the sufficiency of the evidence to determine whether the defendant's victim suffered a "serious bodily injury," "an appellate court should not consider the amelioration or exacerbation of an injury by actions not attributable to the offender, such as medical treatment." *Blea*, 483 S.W.3d at 35. Instead, we are to "consider the risk of death as inflicted by a defendant without modification by the additional consideration of the effects of medical treatment."

6

*Id.* at 34. Importantly as it applies in this case, the State may establish that a "serious bodily injury" occurred without a physician's testimony when the injury and its effects are obvious. *Id.* at 35 (citing *Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd)). Additionally, the complainant who sustained the injury is qualified to express an opinion regarding the seriousness of his injury. *Jackson*, 399 S.W.3d at 292 (citing *Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. [Panel Op.] 1979)). Finally, juries are free to apply their common sense, knowledge, and the experience they gain in the ordinary affairs of life to draw reasonable inferences from the evidence in resolving a dispute about the alleged seriousness of an injury in trials. *Id.*; *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Depending on the strength and repetitiveness of the blows to a person's head, such blows can but do not necessarily always result in a "serious bodily injury" as the term is defined by the Penal Code. *See Sanchez v. State*, 543 S.W.2d 132, 134 (Tex. Crim. App. 1976) (overturning aggravated assault conviction where treating physician testified in hearing on motion for new trial that he did not consider the victim's injuries to have been serious even though the victim's history indicated he momentarily lost consciousness); *Hays v. State,* 480 S.W.2d 635, 637 (Tex. Crim. App. 1972) (upholding aggravated assault conviction where the evidence showed the victim was hit in the head with a rifle, knocked to the ground,

had a cut to the head that required stitches, and the defendant was unable to work for three weeks and forced to accept a lighter job); *Powell v. State*, 939 S.W.2d 713, 718-19 (Tex. App.—El Paso 1997, no pet.) (upholding aggravated assault conviction where the evidence showed the defendant kicked the victim in the head based on the testimony of a physician who indicated the victim suffered a concussion, which the doctor stated he considered to be a serious injury due to the potential for memory loss).

In this case, W.H. suffered a blow to the back of the neck inflicted by a small bat, which caused him to fall, strike his head, caused a significant cut above the left eye, and resulted in W.H. losing consciousness for about fifteen minutes. The two police officers who testified in the trial indicated that based on their training they considered the injuries W.H. received to be serious, and Holman has not challenged their qualifications to express opinions about the seriousness of W.H.'s head injury in his appeal. Because the two officers were not questioned about the training they received in evaluating the severity of reported head injuries, the record also does not show that the officers' respective opinions were wholly without foundation. Both officers testified that they had experience in cases involving victims who suffered head injuries. The testimony of the two officers indicating that W.H.'s injuries were serious constitutes some of the evidence before the jury that was relevant to the jury's decision about the extent to which

8

W.H. was injured, and the jury could have rationally relied on the testimony of the officers along with the other evidence before them in concluding that W.H. suffered a "serious bodily injury" as that term was defined in the charge. *See* Tex. Penal Code. Ann. § 1.07(a)(46).

Additionally, there were medical records in evidence that support the jury's determination that Holman suffered a cut to his forehead that required stitches, a concussion, and a cerebral contusion. The jury was also entitled to rely on W.H.'s assessment of his injuries as serious, as he testified that the blow caused him to suffer more than a momentary loss of consciousness and left him with neck pain that required medication more than a year after his son hit him with a small bat that resulted in the fall and blow to his head. Significantly, W.H. described his injury as serious.

On this record, we conclude that whether W.H. received a "serious bodily injury" was a question of fact that the trial court properly left to the jury's sound discretion. *See Hooper*, 214 S.W.3d at 13; *see also Williams*, 235 S.W.3d at 750. Viewed in the light most favorable to the jury's verdict, we hold that the record contains sufficient evidence to support the jury's conclusion that W.H. sustained a "serious bodily injury." *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13; *see also* Tex. Penal Code Ann. § 1.07(a)(46). We overrule Holman's first issue.

Medical Records

In his second issue, Holman contends that the trial court should have required the State to redact some information that was included in W.H.'s medical records because the records that were admitted included parts that he contends were inadmissible as hearsay. In arguing issue two, Holman complains about two specific statements that are found in the nurse's note section of the records documenting W.H.'s emergency room visit on the day of the robbery. One of Holman's complaints concerns the reference in the nurse's note that W.H. stated that "[m]y son hit me with a wooden bat on the back of my head and I fell face down, he knocked me out." Holman's other complaint concerns the reference in the nurse's note to the mechanism of the injury, which states: "Aggravated assault with baseball bat by son." Holman argues that these statements, which suggest that Holman was the person who perpetrated the assault and suggest that the incident was "aggravated," were not relevant to the healthcare providers' reaching an opinion about W.H.'s condition.

The admissibility of an out-of-court statement under the various exceptions to the general prohibition against admitting hearsay is a matter that falls within the trial court's discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995)). We will not reverse the trial court's ruling unless it falls outside the zone of reasonable

10

disagreement. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). In deciding if the trial court abused its discretion by admitting evidence, we may not reverse a trial court's decision concluding that the evidence was admissible under a hearsay exception solely because we disagree with it. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Additionally, we will not disturb a trial court's evidentiary ruling if the ruling is correct on any theory of law that applies to the ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matter asserted. *Zuliani*, 97 S.W.3d at 595 (citing Tex. R. Evid. 801(d)). In order for hearsay to be admissible, it must fit into the exceptions that are provided by a statute or by the rules of evidence. *Id*. (citing Tex. R. Evid. 802). The exception at issue here is Rule 803(4), which allows a trial court to admit a statement that "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex. R. Evid. 803(4) The rationale behind Rule 803(4)'s exception focuses on the patient and relies on the patient's strong motive to tell the truth because the patient's diagnosis or treatment depends in part on the truthfulness of the patient's statements. *See Taylor v. State*, 268 S.W.3d 571, 580

11

(Tex. Crim. App. 2008) (citing *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980)); *see also White v. Illinois*, 502 U.S. 346 (1992).

In deciding whether the statements identifying W.H.'s son as the perpetrator and describing the assault as aggravated were admissible, the trial court was entitled to consider the fact that Holman went to the emergency room on the day he was injured seeking treatment for his injuries. The fact that W.H. related that he was hit with an object by another person is pertinent to the mechanics of W.H.'s injury and allowed the healthcare providers to appreciate that W.H.'s injury was possibly severe. In our opinion, the trial court could reasonably have considered both who caused the injury and the mechanism of the injury as pertinent to W.H.'s diagnosis, his treatment, and the injuries the healthcare providers were asked to treat. Moreover, in the context of an emergency room visit that resulted in W.H.'s discharge, the trial court could have reasonably considered that the individual who caused W.H.'s injury as information the healthcare providers reasonably needed in deciding whether W.H. could be safely discharged and returned to his home. There is also no evidence in the record that shows that W.H. was not implicitly aware that it was in his best interest to give his medical providers accurate information in response to the questions he was asked while being treated in the emergency room. *See Taylor*, 268 S.W.3d at 589 (noting that when the circumstances show the patient was in a doctor's office or an emergency room for the diagnosis and

12

treatment of a physical ailment, courts almost universally assay the record to evaluate whether the patient was unaware of the need to be truthful with the individuals who provided the patient's care). In Holman's case, we find nothing in the record to show that Holman's father was not aware that he needed to provide his healthcare providers with accurate information about the history of his injury and its cause. Based on the circumstantial evidence showing that W.H. went to the emergency room to be treated for the injuries he suffered earlier that day, we hold that the trial court did not abuse its discretion by refusing to redact the two statements at issue before admitting the records based on the hearsay exceptions found in Rule 803(4). Tex. R. Evid. 803(4).

In his second issue, Holman argues that admitting W.H.'s unredacted statements violated his rights to confront the individuals who treated W.H. in the emergency room. U.S. CONST. amend. VI; *see also Crawford v. Washington*, 541 U.S. 36, 59 (2004). However, Holman did not raise a Confrontation Clause complaint when the records were offered during his trial. Instead, Holman's sole objections to the admissibility of the unredacted statements in the records were that the two statements in the records were inadmissible as hearsay.

An objection that the admission of evidence violates the Confrontation Clause must be presented to the trial court to preserve the complaint for review on appeal. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004); Tex.

R. App. P. 33.1. Holman objected to the statements at issue on the basis that they were inadmissible as hearsay, but he did not object to the statements on the basis that the admission of the records violated his rights under the Confrontation Clause. To the extent Holman now argues for the first time that the admission of the records violated his rights under the Confrontation Clause, we hold that his arguments were not preserved for our review. *Id*.

Having overruled both of Holman's issues, the trial court's judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on December 20, 2016
Opinion Delivered December 28, 2016
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

14